DANIEL A. CROLEY (154386)
FUTTERMAN & DUPREE LLP
160 Sansome Street, 17th Floor
San Francisco, CA 94104
Telephone: (415) 399-3840
Facsimile: (415) 399-3838
dan@dfdlaw.com

*Attorneys for Plaintiff*
*Geller International, Inc.*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| GELLER INTERNATIONAL, INC.<br><br>Plaintiff,<br><br>v.<br><br>HITOSHI NISHIKAWA and ASIA INTERNATIONAL, INC.<br><br>Defendants. | Case No.<br><br>**COMPLAINT OF GELLER INTERNATIONAL, INC. FOR 1) FRAUD IN CONNECTION WITH COMPUTERS (18 U.S.C. § 1030); 2) MISAPPROPRIATION OF TRADE SECRETS (CAL. CIV. CODE § 3426 ET SEQ.); 3) BREACH OF CONTRACT; 4) INTENTIONAL INTERFERENCE WITH CONTRACT; 5) UNFAIR COMPETITION (CAL. BUS. & PROF. CODE §§ 17200 ET SEQ.); 6) INTERFERENCE WITH PROSPECTIVE BUSINESS RELATIONS; 7) REPLEVIN; 8) CONVERSION; 9) TRESPASS TO CHATTEL; 10) BREACH OF FIDUCIARY AND LOYALTY DUTIES AND 11) CIVIL ACTION UNDER CALIFORNIA PENAL CODE SECTION 502**<br><br>**JURY TRIAL DEMANDED** |

## INTRODUCTION

1. Plaintiff Geller International, Inc. ("Geller") brings this Complaint against Defendants Hitoshi Nishikawa and Asia International, Inc. to redress Defendants' misappropriation of Geller's trade secrets, and other wrongful acts taken by Defendants to advance their new, competing business.

1

## PARTIES

2. Geller is a corporation duly organized and existing under the laws of California and having its principal place of business in Burlingame. Geller is a small but highly respected provider of specialty meats and seafood nationally and internationally and, in particular, in at least eleven Asian countries.

3. Defendant Hitoshi Nishikawa is an individual residing at 215 Catalina Avenue, Pacifica, California. Geller is further informed and believes, and on that basis alleges, that Defendant Asia International, Inc. was formed by Nishikawa and its principal place of business is located at 215 Catalina Avenue, Pacifica, California. Geller is informed and believes, and on that basis alleges, that at all relevant times each of the defendants are and were the agent, partner, joint venturer, principal, employee, co-conspirator, and/or aider or abettor of each of the other defendants, and in doing the things alleged was acting within the course and scope of their agency or employment and with the knowledge and consent of each defendant. Geller is further informed and believes, and on that basis alleges, that the acts and conduct of each of the defendants were known to, and authorized and ratified by, the remaining defendants, and each of the defendants is legally responsible for the conduct and damages alleged herein.

## JURISDICTION AND VENUE

4. This Court has subject matter jurisdiction over this action – which arises under the Computer Fraud and Abuse Act of 1986 (18 U.S.C. § 1030) under 28 U.S.C. §§ 1331 and 1338. This Court has supplemental jurisdiction of Plaintiff's pendent state-law causes of action under 28 U.S.C. § 1367.

5. This Court has personal jurisdiction over Defendants because they reside in or have their principal place of business in California, because the confidentiality agreement between Nishikawa and Geller at issue in the third cause of action was made and performed within California, and because Defendants' violation of the Computer Fraud and Abuse Act of 1986 has injured and threatens to injure Geller, whose principal place of business is in California.

6. Venue is proper in this District pursuant to 28 U.S.C. § 1391(a)(2) because a substantial part of the events giving rise to Geller's claim occurred in this District.

## FACTUAL BACKGROUND

**A.    Geller's Business**

7. Geller is a specialty exporter of fine meats, sea food, sausages, produce, organic foods and other foods. Geller has developed over several years relationships with food supplies and buyers worldwide.

**B.    Defendants' Relationship With, And Misappropriation of Proprietary Information From, Geller**

8. From about April 2003 until September 5, 2007 ("Term"), Defendant Nishikawa served as a commissioned sales agent for Plaintiff and, in that capacity, learned (among other things) the identities, transaction habits and preferences, of Plaintiff's customers and suppliers.

9. Plaintiff has spent considerable resources developing customers and supplier information, which is used to generate sales and not generally known in the marketplace. Geller takes reasonable measures to assure such information is not misused, including but not limited by way of contractual restrictions.

10. Plaintiff issued Defendant Nishikawa a laptop computer, in connection with Geller's business. That computer contained confidential identities, contact information, sales information, contract specifications and sales terms for supplier and buyers. Despite oral and written requests, Defendant Nishikawa initially failed and refused to return such laptop. Rather, he only returned the laptop on or about September 17, 2007 and, even then and on information and belief, he returned the laptop after destroying certain information stored thereon. On information and belief, Plaintiff alleges Defendants used such laptop after the Term and/or data store thereon without authorization in connection with their new business.

11. On information and belief, Defendants have solicited Plaintiff's customers and suppliers and have used confidential and trade secret information of Plaintiff in the process, which has and will cause Plaintiff loss and damages.

12. Nishikawa agreed to an "Employment Agreement" as an express condition of his relationship with Plaintiff. (A true and correct copy of Nishikawa's fully-executed Employment Agreement is attached hereto as Exhibit A.) Among other things the Employment Agreement

restricts Defendant's activities during the relationship (Paragraph 6 tilted Contractor's Loyalty to Employer's Interests") and during and after the relationship (Paragraph 7 titled Nondisclosure of Information Concerning Business).

13. Geller is informed and believes, and on that basis alleges, that Nishikawa is actively soliciting business for Asia International, Inc. and is using Geller information to do so. Without limiting the generality of the foregoing and to illustrate the striking and willful nature of Defendants' misappropriation, Plaintiff is informed and believes and, on that basis alleges, Defendants usurped an opportunity made known to Hitoshi Nishikawa from his relationship with Plaintiff to place an order of scallops from Plaintiff's supplier; Defendants placed this order initially under Plaintiff's account and name and the later instructed the supplier to put the order into one or both of Defendants' names. Defendants then sold such scallops to Plaintiff's customer.

## FIRST CAUSE OF ACTION
### (Civil Action for Violation of Computer Fraud and Abuse Act (18 U.S.C. § 1030(g)))
### (Against All Defendants)

14. Geller re-alleges and incorporates herein paragraphs 1-13 above.

15. The computer that Geller placed in Nishikawa's workspace for his use in carrying out the purposes of his duties, and all Geller computers that Nishikawa accessed via Geller's intraoffice computer network in the course of downloading or copying Geller's proprietary and confidential information, were and are used in interstate or foreign commerce. Each is thus a "protected computer" for purposes of 18 U.S.C. § 1030.

16. By using one or more of Geller's "protected computers" to access, download and copy trade-secret and related data belonging to Geller, Nishikawa intentionally accessed one or more protected computers without authorization and, as a result of his conduct, caused or recklessly caused Geller both damage, within the meaning of 18 U.S.C. § 1030(a)(5)(A)(ii)- (iii), and a loss of at least $5,000 in value during a one-year period, within the meaning of 18 U.S.C. § 1030(a)(5)(B)(i). This conduct constitutes a violation of 18 U.S.C. § 1030(a)(5).

17. Nishikawa has caused Geller "damage," as defined by 18 U.S.C. § 1030(e)(8), because his conduct has impaired the integrity of data, a program, a system, or information by enabling him to accumulate unauthorized copies of trade-secret, programs, systems, and on information and belief, by requiring Geller to incur expenses and take corrective efforts to determine the extent of his breach of the security of its protected computers and of its trade-secret, and to investigate his efforts to disseminate and use that material and by destroying the hard drive and/or data on stored thereon.

18. Defendants' conduct has caused and will cause Geller "loss," as defined by 18 U.S.C. § 1030(e)(11), because their conduct has imposed on Geller the cost of responding to their offense, conducting a damage assessment, and attempting to restore the data, programs, systems and/or information to their condition prior to the offense by investigating his conduct and initiating litigation to ensure that all misappropriated copies are located and either returned or destroyed, and not used in unfair competition.

19. Having suffered damage or loss by reason of a violation of 18 U.S.C. § 1030(a)(5)(B), Geller is entitled to and hereby does bring a civil action against Defendants under Section 1030(g) for its economic damages caused by that loss and damage, including fees of experts and attorneys retained to investigate and prosecute this action.

**SECOND CAUSE OF ACTION**
(Statutory Trade Secret Misappropriation Under Civil Code §§ 3426 et seq.)

(Against All Defendants)

20. Geller re-alleges and incorporates herein paragraphs 1-19 above.

21. Geller has developed and uses trade secret and confidential and proprietary information including, without limitation: the identity of its customers; the identity, authority, characteristics and responsibilities of key contact persons at Geller's customers; the needs of its customers; its customer profiles; its customer credit histories; and its sales and financial information.

22. Geller developed its trade secrets and confidential and proprietary information through great expenditure of time, effort and money over the years.

23. Geller's trade secrets and confidential and proprietary information have independent economic value from not being generally known to the public and have provided Geller with a commercial advantage over its competitors. Geller's competitors have no ready access to the Confidential Information and must expend significant time, effort and money to obtain this information

24. Geller has made and continues to make reasonable efforts to protect the confidentiality and secrecy of its confidential and proprietary information. These efforts include, but are not limited to, limiting dissemination of this information on a need to know basis, informing its employees of the confidential nature of this information through contracts.

25. Defendants misappropriated Geller's trade secrets by improperly acquiring, retaining and/or misusing the trade secrets and/or by the unauthorized use or disclosure of the trade secrets for his own benefit and financial gain. Defendants' conduct is in violation of the California Uniform Trade Secrets Act, Civil Code §§ 3426 et seq., and common law.

26. As a direct and proximate result of Defendants' misappropriation of Geller's trade secrets, Geller has been and will continue to be damaged in an amount to be ascertained at the time of trial.

27. As a direct and proximate result of Defendants' misappropriation of Geller's trade secrets, Defendants have been unjustly enriched. The amount of this unjust enrichment will be determined at the time of trial.

28. In the event that neither Geller's actual damages nor Defendants' unjust enrichment are subject to proof, Geller is entitled to reasonable royalty as provided by Civil Code section 3426.3(b)

29. On information and belief, Defendants' acts and omissions as alleged in this Complaint were willful, wanton, malicious and oppressive in that Defendants misappropriated Geller's trade secrets with the deliberate intent to injure Geller's business. Geller is therefore entitled to an award of punitive damages against Defendants as provided by Civil Code section 3426.3(c).

30. As a direct and proximate result of Defendants' misappropriation of Geller's trade secrets, Geller has had to retain legal counsel. Geller is entitled to recover its attorney's fees against Defendants pursuant to Civil Code section 3426.4.

31. Unless enjoined by this Court, Defendants' conduct and continued use of misappropriated trade secrets will cause great and irreparable injury to Geller. Geller has no other or adequate remedy at law for such acts and threatened acts. Geller therefore requests that during the pendency of this action, this Court issues an injunction, and that, after trial, this Court issue a permanent injunction, restraining and enjoining Defendants and their agents, employees, attorneys and representatives and anyone acting at their direction or on their behalf.

### THIRD CAUSE OF ACTION
### (Breach of Express Contract)

### (Against Nishikawa Only)

32. Geller re-alleges and incorporates herein paragraphs 1-31 above.

33. Geller and Nishikawa are parties to the Employment Agreement, a written contract executed on or about April 11, 2003 which is described in detail in Paragraph 12 above.

34. Geller has, at all times mentioned herein, fully performed and complied with all its obligations and requirements under the Employment Agreement.

35. Nishikawa has breached the Employer Agreement by failing to hold in confidence, by in fact disclosing and using, confidential information belonging to Geller and by destroying or making less accessible data belonging to Geller.

36. Nishikawa further breached the Employment Agreement because, during the Term, to the extent he engaged in an employment or business activity which is competitive with, or would otherwise conflict with, his relations and loyalty to Geller.

37. As a result of Nishikawa's breach of the Employment Agreement, Geller has suffered and will continue to suffer damage to its business. Nishikawa's misappropriation and disclosure of trade secrets and/or confidential and proprietary information has compromised the confidentiality of Geller's confidential data. It has also compelled Geller to expend time, money, and resources to investigate his misconduct.

38. Geller is informed and believes and thereon alleges that Nishikawa has continued to engage in the conduct complained of herein and, unless restrained and enjoined, will continue to do so to Geller's irreparable harm. Geller has no adequate remedy at law, and money damages cannot fully compensate it for the disclosure of its trade secret and other confidential or proprietary information. Geller is thus entitled to injunctive relief prohibiting Nishikawa from further disclosing its trade secrets and confidential information, and compelling Nishikawa to return all copies thereof and in particular the laptop.

39. Geller is further entitled to an order decreeing that Nishikawa holds in constructive trust for the benefit of Geller any revenues or profits derived in any way by him from the use, sale, or exploitation of Geller's protected information.

40. As a proximate result of Defendant's breach, Geller has incurred damages in an amount subject to proof at trial.

## FOURTH CAUSE OF ACTION
### (Intentional Interference With Contract)

### (Against All Defendants)

41. Geller re-alleges and incorporates herein paragraphs 1-41 above.

42. As established, a valid oral contract exists among Plaintiff, on the one hand, and its customers and suppliers, on other hand.

43. Defendants knew of many of these agreements.

44. Defendants intentionally acted to induce customers and suppliers to breach the agreements and/or to cease doing any or less business with Plaintiff.

45. The conduct of Defendants that induced customers and suppliers to breach their agreements has damaged Plaintiff.

46. Geller is informed and believes and thereon alleges that Defendants have continued intentionally to induce customers and/or suppliers to persist in the conduct complained of herein, which he has done, and that, unless Defendants are restrained and enjoined, they will continue to do so to Geller's irreparable harm. Geller has no adequate remedy at law, and money damages cannot fully compensate it for the disclosure of its trade secret and other confidential or

proprietary information, or for the copying and incorporation of its confidential information into Defendants' competing business. Geller is thus entitled to injunctive relief prohibiting Defendants from further inducing or causing customers and/or suppliers that Nishikawa worked with through Plaintiff to cease, lessen or alter their business relationship with Plaintiff.

47. The foregoing conduct has directly and proximately damaged Plaintiff in an amount to be ascertained at trial.

48. Defendants' conduct in intentionally interfering with Plaintiff's customer and supplier contract was willful, oppressive, and malicious, entitling Geller to punitive damages in an amount to be ascertained at trial.

## FIFTH CAUSE OF ACTION
(Unfair Competition Under Cal. Bus. & Prof. Code §§ 17200 et seq.)

(Against All Defendants)

49. Geller re-alleges and incorporates herein paragraphs 1-48 above.

50. Defendants have wrongfully misappropriated, or attempted wrongfully to misappropriate, Plaintiff's trade secrets and other confidential and proprietary information.

51. Defendants' acts, as alleged above, constitute violations of the Uniform Trade Secrets Act, California Civil Code §§ 3426 et seq.; and the Computer Fraud and Abuse Act of 1986, 18 U.S.C. § 1030; and therefore constitute unlawful business practices within the meaning of California Business and Professions Code § 17200. Defendants' acts also constitute unfair and fraudulent business acts or practices within the meaning of Section 17200.

52. The natural, probable, and foreseeable result of Defendants' conduct has been and will continue to be to injure Geller's business, to impose substantial expenses on Geller to counteract that conduct, and to injure and damage Geller in other ways.

53. Defendants have continued to engage in the conduct complained of herein despite repeated warnings and reasonable demands to return all misappropriated and other confidential material or demonstrate that Defendants have not misappropriated any confidential or proprietary Geller materials. Unless restrained and enjoined, Defendants will continue to do so to Geller's irreparable harm. Geller has no adequate remedy at law, and money damages cannot fully

compensate it for the injury to its business. Geller is thus entitled to injunctive relief prohibiting Defendants from disclosing or continuing to use Geller's trade secrets, and other confidential information to further his competing enterprise, and compelling Defendants to return all copies thereof and Geller's laptop computer.

### SIXTH CAUSE OF ACTION
### (Intentional Interference with Economic Advantage)

### (Against All Defendants)

54. Geller re-alleges and incorporates herein paragraphs 1-53 above.

55. Geller has invested substantial amounts of time, money and effort in developing its business, including but not limited to confidential information about its suppliers and customers. During the Term, Defendants worked on and supervised accounts belonging to Plaintiff and, therefore, Defendants were aware that business relationships existed between these and other customers and suppliers and Geller.

56. Geller is informed and believes and on that basis alleges, Defendants approached representatives from one or more suppliers and/or customers and, using confidential information, undermined Geller, all with the intent to harm Geller financially and to induce customers and/or suppliers to cease or lessen their business relationship with Geller.

57. Geller's current and prospective customer relationships are and were of existing and prospective economic benefit to Geller.

58. Geller is informed and believes, and on that basis alleges, that Defendants have intentionally engaged in the alleged conduct and made these false representations to persons with whom Geller does or may do business in order to interfere with and disrupt these business relationships.

59. As a result of Defendants' acts of interference, one or more customers and/or suppliers, on information and belief, has lessened and/or ceased its business relationship with Geller.

60. Defendants' acts of interference threaten to cause Geller to lose existing and potential customers and/or business.

61. As a direct and proximate result of Defendants' wrongful conduct, Geller has suffered and will continue to suffer general and special damages in an amount to be proven at trial.

62. Geller is informed and believes that, unless restrained, Defendants will continue to approach Geller's customers and disrupt the business relationships between Geller and its other customers, whose accounts Defendant Nishikawa worked on during his employment with Geller. This will cause Geller great and irreparable injury for which damages would not afford adequate relief, in that they would not completely compensate for the injury to Plaintiff's business reputation and good will.

**SEVENTH CAUSE OF ACTION**
**(Replevin)**

**(Against All Defendants)**

63. Geller restates each of the above allegations as if fully set forth herein.

64. At the time of the commencement of this action, and at all times hereinafter mentioned, Geller was and still is the owner and entitled to the immediate possession of the Geller confidential material in Defendants' possession, including the data stored on such laptop and all copies and data derived therefrom.

65. On information and belief, Defendants are in possession of the documents and materials described above and wrongfully detained and still detain such documents and materials from Plaintiff.

66. The detention by Defendants of any of the documents and materials described above is wrongful and has and will continue to cause Plaintiff damages according to proof.

**EIGHTH CAUSE OF ACTION**
**(Conversion)**

**(Against All Defendants)**

67. Geller re-alleges and incorporates herein paragraphs 1-66 above.

68. Geller owns all of the trade secrets and confidential and proprietary technical and customer information at issue in this Complaint. Defendants wrongfully acquired Geller's trade secrets and confidential, proprietary and customer information.

69. Geller is entitled to recover from Defendants for the actual damages sustained by Geller as a result of Defendants' wrongful acts as described in this Complaint. The amount of such damages will be proven at trial.

70. Because Defendants acted with oppression, malice, and fraud, Geller is entitled to an award of punitive damages under California Civil Code § 3294.

### NINTH CAUSE OF ACTION
(Trespass to Chattel)

(Against All Defendants)

71. Geller re-alleges and incorporates herein paragraphs 1-70 above.

72. To the extent Defendants' misuse and/or destruction of the lap top computer or data stored thereon does not rise to the level of "Conversion", Plaintiff alleges in the alternative Trespass to Chattel.

73. Based on the foregoing allegations, Defendants' actions have caused interference with possession of personal property and caused the owner thereof, Plaintiff, actual damages by reason of the impairment of the property and the loss of its use.

74. Geller is entitled to recover from Defendants for the actual damages sustained by Geller as a result of Defendants' wrongful acts as described in this Complaint. The amount of such damages will be proven at trial.

75. Because Defendants acted with oppression, malice, and fraud, Geller is entitled to an award of punitive damages under California Civil Code § 3294.

### TENTH CAUSE OF ACTION
(Breach Of Loyalty And/Or Fiduciary Duties)

(Against Defendant Nishikawa Only)

76. Geller re-alleges and incorporates herein paragraphs 1-75, above.

77. By reason of their relationship, Defendant Nishikawa owned Plaintiff a duty of loyalty and/or a fiduciary duty, including but not limited to act loyally for the principal's benefit in all matters connected with the agency relationship.

78. By reason of the foregoing actions, Defendant has breached his duty of loyalty and/or a fiduciary duty owned to Plaintiff.

79. By reason of the foregoing actions, Plaintiff is entitled to damages according to proof.

## ELEVENTH CAUSE OF ACTION
### (Violation of California Penal Code Section 502)

### (Against All Defendants)

80. Geller incorporates by reference each and every allegation contained in Paragraphs 1 through 79 of this Complaint as though fully set forth herein.

81. On information and belief, Defendants improperly gained access to Geller's computer and information stored thereon, without authorization and through a false representation that Nishikawa would not misuse such confidential information. On information and belief, Defendants have applied destructive software or other means to destroyed or make inaccessible data stored on such computer

82. Defendant Nishikawa exceeded his authorized access to Geller's computer network when, on information and belief, (a) he copied Geller confidential information and other proprietary information for his personal gain; and (b) he deleted information and files (including confidential information) and/or e-mails stored on Geller's computer so as to deprive Geller of access to this information.

83. As a direct and proximate result of Defendants' conduct, Geller has been and will continue to be damaged in an amount to be determined at the time of trial.

84. As a direct and proximate result of Defendants' conduct, Defendants have been unjustly enriched. Geller is entitled to an amount equal to Defendants' unjust enrichment to be determined at the time of trial.

85. On information and belief, Defendants' acts and omissions as alleged in this Complaint were willful, wanton, malicious and oppressive and they acted with the deliberate intent to injure Geller's business. Geller is therefore entitled to an award of punitive damages against Defendants.

86. As a direct and proximate result of Defendants' conduct, Geller has had to retain legal counsel. Geller is entitled to recover its attorney's fees against the Defendants under California Penal Code section 502(e)(2).

87. Unless enjoined by this Court, Defendants' conduct will cause great and irreparable injury to Geller. Geller has no other or adequate remedy at law for such acts and threatened acts. Geller therefore requests that during the pendency of this action, this Court issues an injunction, and that, after trial, this Court issue a permanent injunction, restraining and enjoining Defendants as requested below.

## PRAYER

WHEREFORE, Geller prays for judgment against Defendants as follows:

1. For a temporary and preliminary restraining order requiring the preservation, turnover, electronic mirroring, and expedited discovery of evidence related to this action by Defendants and all those acting in concert with either of them; and Defendants and all those acting in concert with either Defendant by any means whatsoever are commanded, enjoined, or restrained, as follows:

(a) From using, copying, disclosing, or incorporating in any Geller trade secrets or confidential information, including without limitation its customer or supplier identities, contact information or buying or selling information;

(b) Immediately to preserve and return to Geller or to this Court (i) all information, including trade secret, and other confidential or proprietary information, improperly acquired from Geller, (ii) all materials (in paper, electronic, or any other form) containing any, or derived from, such trade secret, or other confidential or proprietary information, (iii) all copies of such materials, and (iv) all copies or derivative information from lap top; and

(c) To turn over to the Court any proceeds they have received from

1 | misappropriation of its trade secrets, to be held in constructive trust until the conclusion of this litigation;

2. For economic damages pursuant to 18 U.S.C. § 1030(g), along with lost interest thereon, according to proof;

3. For general damages, along with lost interest thereon, according to proof; and

4. For restitution and disgorgement of any benefits acquired by means of the acts alleged above;

5. For attorney's fees and costs to the extent permitted by law;

6. For punitive damages, including exemplary damages pursuant to California Civil Code § 3426.3(c); and

7. For such other relief as the Court deems just and proper.

Dated: October 9, 2007

RESPECTFULLY SUBMITTED,

FUTTERMAN & DUPREE LLP

_____
DANIEL A. CROLEY (154386)
160 Sansome Street, 17th Floor
San Francisco, CA 94104
Telephone: (415) 399-3840
Facsimile: (415) 399-3838
dan@dfdlaw.com

*Attorneys for Plaintiff*
GELLER INTERNATIONAL, INC.

### JURY TRIAL DEMANDED

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands trial by jury of all issues properly triable of right by a jury.

Dated: October 9, 2007

FUTTERMAN & DUPREE LLP

_____
DANIEL A. CROLEY (154386)
160 Sansome Street, 17th Floor
San Francisco, CA 94104
Telephone: (415) 399-3840
Facsimile: (415) 399-3838
dan@dfdlaw.com
*Attorneys for Plaintiff*
GELLER INTERNATIONAL, INC.

Geller International, Inc.
1799 Old Bayshore Hwy, Burlingame, Calif. 94010 ~ USA
Phone 650-692-6488 ~ Fax 650-692-5088
E-mail: jgeller@gellerinternational.com

## EMPLOYMENT AGREEMENT

This Agreement made and entered into this 11th day of April, 2003,
By and between GELLER INTERNATIONAL, INC ("employer"), and HITOSHI NISHIKAWA
("CONTRACTOR-COMMISION SALES"). The parties recite that:

A. Employer is engaged in IMPORT/EXPORT SALES, OF U.S. FOODS, and maintains business premises at
1799 Old Bayshore Hwy, Burlingame, Ca USA.

B. Mr. Nishikawa is willing to be contracted by employer, and employer is
Willing to contract Mr. Nishikawa, on the terms and conditions hereinafter set
Forth. For the reasons set forth above, and in consideration of the
Mutual covenants and promises of the parties hereto, employer and
Contractor covenant and agree as follows:

1. AGREEMENT to contract for sales & management services.
   Employer hereby contracts Mr. Nishikawa at the above-mentioned
Premises, and contractor hereby accepts and agrees to such employment.

2. DESCRIPTION OF CONTRACTOR'S DUTIES
   Subject to the supervision and pursuant to the orders, advice, and
direction of employer, contractor shall perform such duties as are
customarily performed by one holding such position in other businesses or
enterprises of the same or similar nature as that engaged in by employer.
Contractor shall additionally render such other and unrelated services and
Employer may assign duties as to him from time to time.

3. MANNER OF PERFORMANCE OF CONTRACTOR'S DUTIES
   Contractor shall at all times faithfully, industriously, and to the best
of his ability, experience, and talent, perform all duties that may be
required of and from him pursuant to the express and implicit terms
hereof, to the reasonable satisfaction of employer. Such duties shall be
rendered at the abovementioned premises and at such other place or places
as employer shall in good faith require or as the interests, needs,
business, and opportunities of employer shall require or make advisable.

4. DURATION OF EMPLOYMENT
   The term of contract-employment shall be 1 year(s) at stage 1,
commencing on April 14th, 2003. On or about April 1 2004, the terms for stage 2
will be negotiated and Mr. Nishikawa will have the option to remain at
the current terms of contract-employment with a sales commission pay structure,
or have the option to change from a contractor on a sales commission basis, to
employment with salary & commission basis. On or about April 1, 2004 Mr. Nishikawa
will have the option to change his status of his employment with an opportunity to buy
into a limited partnership at 5% ownership. An additional 5% ownership will be offered
to Mr. Nishikawa at the commencement of his 4 th year of employment at Geller International, Inc.

5. COMPENSATION; REIMBURSEMENT
   Employer shall pay Contractor and Contractor agrees to accept from

*(handwritten notes in margin:)* payments / PAID / File Ref # 5/29 / GI/BKT-TBIC / 01/03 / 5/15/03 2,500.⁰⁰ ck# 162

EXHIBIT A

employer, in full payment for Contractor's services hereunder, compensation at the rate of 70% of the net profit from each sale. Payable within 15 days of the closing of such sale, and the final payment being received from the bank, or customer.

In addition to the foregoing, employer will reimburse Contractor for any and all necessary, customary, and usual expenses incurred by him while traveling for and on behalf of the employer pursuant to employer's directions.

Employer will offer, for the 1st 3 months (April, May June 2003) a sum of US $5,000.00 per month, as a draw against future commissions. Mr. Nishikawa, by signing of this agreement, agrees to re-pay Employer the sum of US$ 1,000.00 per month for 15 months, until the load is paid in full. No interest will be levied against this draw on commissions.

### 6. CONTRACTOR'S LOYALTY TO EMPLOYER'S INTERESTS

Contractor shall devote all of his time, attention, knowledge, and skill solely and exclusively to the business and interests of employer, and employer shall be entitled to all benefits, emoluments, profits, or other issues arising from or incident to any and all work, services, and advice of Contractor. Contractor expressly agrees that during the term hereof he will not be interested, directly or indirectly, in any form, fashion, or manner, as partner, officer, director, stockholder, advisor, Contractor, or in any other form or capacity, in any other business similar to employer's business or any allied trade, except that nothing herein contained shall be deemed to prevent or limit the right of Contractor to invest any of his surplus funds in the capital stock or other securities of any corporation whose stock or securities are publicly owned or are regularly traded on any public exchange, nor shall anything herein contained by deemed to prevent Contractor from investing or limit Contractor's right to invest his surplus funds in real estate.

### 7. NONDISCLOSURE OF INFORMATION CONCERNING BUSINESS

Contractor will not at any time, in any fashion, form, or manner, either directly or indirectly divulge, disclose, or communicate to any person, firm, or corporation in any manner whatsoever any information of any kind, nature, or description concerning any matters affecting or relating to the business of employer, including, without limitation, the names of any its customers, the prices it obtains or has obtained, or at which it sells or has sold its products, or any other information concerning the business of employer, its manner of operation, or its plans, processes, or other date of any kind, nature, or description without regard to whether any or all of the foregoing matters would be deemed confidential, material, or important. The parties hereby stipulate that, as between them, the foregoing matters are important, material, and confidential, and gravely affect the effective and successful conduct of the business of employer, and its good will, and that any breach of the terms of this section is a material breach of this agreement.

### 8. OPTION TO TERMINATE ON PERMANENT DISABILITY OF CONTRACTOR

Not withstanding anything in this agreement to the contrary, employer is hereby given the option to terminate this agreement in the event that during the term hereof Contractor shall become permanently disabled, as the term "permanently disabled" is hereinafter fixed and defined. Such option shall be exercised by employer giving notice to Contractor by registered mail, addressed to him in care of employer at the above stated

address, or at such other address as Contractor shall designate in writing, of its intention to terminate this agreement on the last day of the month during which such notice is mailed. On the giving of such notice this agreement and the term hereof shall cease and come to an end on the last day of the month in which the notice is mailed, with the same force and effect as if such last day of the month were the date originally set forth as the termination date. For purposes of this agreement, Contractor shall be deemed to have become permanently disabled if, during any year of the term hereof, because of ill health, physical or mental disability, or for other causes beyond his control, he shall have been continuously unable or unwilling or have failed to perform his duties hereunder for thirty (30) consecutive days, or if, during any year of the term hereof, he shall have been unable or unwilling or have failed to perform his duties for a total period of thirty (30) days, whether consecutive or not. For the purposes hereof, the term "any year of the term hereof" is defined to mean any period of 12 calendar months commencing on the first Day of April and terminating on the last day of April of the following year during the term hereof.

## 9. DISCONTINUANCE OF BUSINESS AS TERMINATION OF EMPLOYMENT

Anything herein contained to the contrary notwithstanding, in the Event that employer shall discontinue operations at the premises mentioned above, then this agreement shall cease and terminate as of the last day of the month in which operations cease with the same force and effect as if such last day of the month were originally set forth as the termination date hereof.

## 10. CONTRACTOR'S COMMITMENTS BINDING ON EMPLOYER ONLY ON WRITTEN CONSENT

Contractor shall not have the right to make any contracts or other commitments for or on behalf of employer without the written consent of employer.

## 11. CONTRACT TERMS TO BE EXCLUSIVE

This written agreement contains the sole and entire agreement between The parties, and supersedes any and all other agreements between them. The parties acknowledge and agree that neither of them has made any representation with respect to the subject matter of this agreement or any representations inducing the execution and delivery hereof except such representations as are specifically set forth herein, and each party acknowledges that he or it has relied on his or its own judgment in entering into the agreement. The parties further acknowledge that any statements or representations that may have heretofore been made by either of them to the other are void and of no effect and that neither of them has relied thereon in connection with his or its dealings with the other.

## 12. WAIVERS OR MODIFICATION INEFFECTIVE UNLESS IN WRITING

No waiver or modification of this agreement or of any covenant, condition, or limitation herein contained shall be valid unless in writing and duly executed by the party to be charged therewith. Furthermore, no evidence of any waiver or modification shall be offered or received in evidence in any proceeding, arbitration, or litigation between the parties arising out of or affecting this agreement, or the rights or obligations of any party hereunder, unless such waiver or modification is in writing, duly executed as aforesaid. The provisions of this paragraph may not be waived except as herein set forth.

### 13. CONTRACT GOVERNED BY LAW

This agreement and performance hereunder shall be construed in accordance with the laws of the State of California.

### 14. BINDING EFFECT OF AGREEMENT

This agreement shall be binding on and inure to the benefit of The respective parties and their respective heirs, legal representatives, successors, and assigns.

### 15.
Health benefits, in year 1 for Mr. Nishikawa are to be paid by Mr. Nishikawa. (*)
Health benefits, in year 2 and forward, for Mr. Nishikawa are to be paid by the employer Should Mr. Nishikawa join the company as an employee, but not paid should he remain as a contractor.

(*) The employer will consider payment of health benefits in year one, after 6 Months of employment are complete, based on the employees sales and generation of profits.

Executed on the date first above written.

_____, Employer          _____, Contractor
James M. Geller Date: 4/11/03         Hitoshi Nishikawa date: 4-11-2003