DILLINGHAM & MURPHY, LLP
CARLA J. HARTLEY (SBN 117213)
BARBARA L. HARRIS CHIANG (SBN 206892)
225 Bush Street, 6th Floor
San Francisco, California 94104-4207
Telephone:   (415) 397-2700
Facsimile:   (415) 397-3300

Attorneys for Defendants HITOSHI NISHIKAWA
and ASIA INTERNATIONAL, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA – SAN FRANCISCO DIVISION

| GELLER INTERNATIONAL, INC., | Case No. C-075159 MMC |
|---|---|
| Plaintiff, | **DEFENDANTS' OPPOSITION TO PLAINTIFF'S RENEWED EX PARTE MOTION FOR TEMPORARY RESTRAINING ORDER AND FOR EXPEDITED DISCOVERY AND AN ORDER TO SHOW CAUSE REGARDING A PRELIMINARY INJUNCTION AGAINST DEFENDANTS** |
| v. | |
| HITOSHI NISHIKAWA, and ASIS INTERNATIONAL, INC., | |
| Defendants. | |

I.   PRELIMINARY STATEMENT.

After seeking an ex parte temporary restraining order without giving defendants notice, plaintiff GELLER INTERNATIONAL, INC. ("Plaintiff" or "Geller International") now renews its motion for a temporary restraining order and expedited discovery. As set forth herein, plaintiff's motion is a preemptive effort to prevent a former employee from using nonproprietary and non-confidential information, including contacts which preexisted his relationship with Geller International, to pursue the fledgling business he began after Geller terminated his employment. For a variety of good reasons, including the absence of good cause and lack of candor, the extraordinary relief sought by Geller International should be denied.

///

///

///

II. **FACTUAL BACKGROUND**

Defendant HITOSHI NISHIKAWA has worked in the food import/export business for over 25 years, specializing in developing business for Asian customers. In April 2003, he joined plaintiff Geller International. At the time Mr. Nishikawa joined Geller, Geller was not selling products to restaurants and was not involved in the importation of Wagyu beef from Japan.

Mr. Nishikawa used his contacts to develop new business for Geller. Following the Japanese ban on importation of American beef and the United States lifting the ban on the importation of Japanese beef in March 2005, Mr. Nishikawa established a relationship with a company who was authorized to import Japanese beef to the United States. Mr. Nishikawa and Mr. Geller then used sources such as the internet to locate high end restaurants that were potentially interested in purchasing the beef and contacted them in an effort to solicit. This business ended up being quite successful and profitable for Geller.

Pursuant to the terms of Mr. Nishikawa's employment agreement with Geller, in April 2004 and April 2007, Geller was to offer him an ownership interest in the company. Mr. Nishikawa was not interested in pursuing any partnership interest prior to 2007 because Mr. Geller told him that if he became a partner his commission would be reduced from 70% to 50%. In August 2007, Mr. Nishikawa approached Mr. Geller, and reported that he was unhappy because he believed that Mr. Geller had been miscalculating his commissions for the previous year. Mr. Geller told Mr. Nishikawa that he was sorry he felt that way and said he would see if he could come up with a better proposal and mentioned the possibility of a partnership. Mr. Nishikawa told him if something could be worked out he was going start his own company on October 1, 2007. Geller told Mr. Nishikawa that he would get back to him.

When Mr. Nishikawa did not hear back from Mr. Geller, he approached him again on September 5, 2007, and asked what Mr. Geller's thoughts were regarding the proposed partnership. Mr. Geller suggested Nishikawa would get about 20% to 30% in the business. Nishikawa told him he wanted more than 50% of the business because he was the one who had developed the business at Geller International and was generating majority of its business. Geller him to pack up my stuff and leave and not come back.

Page 2 – C-075159 MMC
Opposition to Ex Parte Motion For Temporary Restraining Order

Mr. Geller initially asked Mr. Nishikawa to leave his work laptop, but Mr. Nishikawa proposed that he keep the computer in lieu of reimbursement for money he contributed to the purchase of a refrigerator for the company. Mr. Nishikawa understood that this arrangement was acceptable because Mr. Geller did not indicate that it was not.

Following his termination, Mr. Nishikawa briefly had contact with the customer and distributor involved in a scallops order that had been initiated before his termination. However, he ended this contact on September 12 or 13, 2007 and never received any compensation related to it.

Mr. Nishikawa contacted the chef at a restaurant in Miami, Prime One Twelve, several times after leaving Geller. Prime One Twelve was one of the customers Mr. Nishikawa developed for Wagyu orders. Mr. Nishikawa has not made any effort to contact Prime One Twelve since September 19, 2007 and never received any compensation related to the restaurant since leaving Geller.

Mr. Nishikawa was also contacted after he left Geller by a Japanese customer and asked to handle an order for a pork product. Mr. Nishikawa and Geller had both done business with this customer before Mr. Nishikawa began working at Geller. On September 27, 2007, he attempted to place this order with Mohawk Packing Company but Mohawk refused to accept the order. Mr. Nishikawa has not attempted to place any additional similar orders and has not received any compensation related to this customer since beginning his own business.

Mr. Nishikawa was in Hawaii from September 10 to 15, 2007. The first time he became aware that Geller was requesting his laptop was when he returned from Hawaii and found Geller's attorney's September 10, 2007 correspondence. Mr. Nishikawa immediately returned the laptop the next business day, September 17.

Before receiving this letter, on approximately September 8 or 9, Mr. Nishikawa was attempting to back up the computer and it crashed. He attempted to restart the computer with a recovery disk. At no time did he intentionally destroy any data on the computer.

At present, Mr. Nishikawa has the external hard drive which he was using in his efforts to back up the laptop (which does not appear to have any accessible data on it), a spreadsheet he developed during his employment with Geller to track his commissions, commission reports

Page 3 – C-075159 MMC
Opposition to Ex Parte Motion For Temporary Restraining Order

provided by Geller, and several Federal Express invoices for purposes of documenting the cost of shipping versus what was actually charged against his commission. Mr. Nishikawa does not have any other documents or property with information pertaining to Geller. Mr. Nishikawa retained the documents because he believes that he is still owed by Geller.

III. **PLAINTIFF HAS FAILED TO MEET ITS BURDEN OF JUSTIFYING THE ISSUANCE OF A TRO**

Geller International asserts a litany of claims against Mr. Nishikawa and Asia International including misappropriation of trade secrets, but plaintiff's allegations are largely conclusory, with few specifics or supporting facts. What Geller International fails to advise the Court is that Mr. Nishikawa brought a vast amount of knowledge to the table regarding buyers and distributors when he joined Geller International, with more than 25 years in the business.

Plaintiff also seeks a "temporary restraining order" enjoining defendants from from (1) deleting or destroying any electronic files or folder under the email address of hitoshinishikawa@sbcglobal.net; (2) disclosing, transferring, sending or transmitting any content of any data taken from plaintiff; (3) disclosing any of plaintiff's suppliers or vendors and pricing information; and (4) disclosing confidential information regarding Geller's customers or suppliers' and (5) from soliciting any of Geller International's customers unless defendants can show Mr. Nishikawa conducted substantial business with the customer before working for Geller International.

Plaintiff also seeks an affirmative order from the Court: (1) requiring return of all Geller International's electronic data (and hard copies); (2) requiring defendants' to provide all electronic devices to plaintiff's computer forensic expert within 5 days to remove all Geller International's data at defendants' expense; and (3) to allow Geller International to serve a subpoena on SBC for a list of all accounts including but not limited to hitoshinishikawa@sbcglobal.net; Plaintiff also seeks expedited discovery, including written discovery to be responded to in 5 days and up to 3 depositions per side to commence immediately.

No doubt plaintiff would like to rummage through a fledgling competitor's computer systems, review confidential and privileged attorney-client communications, and gain most of the

relief it could ask for in this lawsuit by obtaining the information independently developed by Mr. Nishikawa – using his own time, own equipment, and their own resources. A temporary restraining order is designed merely to preserve the status quo until there is an opportunity to hold a hearing on the application for a preliminary injunction, *see*, Wright, Miller & Kane, <u>Federal Practice and Procedure</u>; Civil 2d §2951, <u>Granny Goose Foods, Inc. v. Brotherhood of Teamsters & Auto Truck Drivers</u> (1974) 415 U.S. 423, 439, 94 S.Ct. 1113; 39 L.Ed 2d 435. A party seeking a TRO must satisfy the same test required for the issuance of a preliminary injunction (*see*, <u>Lockheed Missile & Space Co. v. Hughes Aircraft Co.</u> (N.D. Cal., 1995) 887 F.Supp. 1320, 1322). The Ninth Circuit Court of Appeals has identified the standards governing the issuance of a preliminary injunction in <u>Sega Enters. v. Accolade, Inc.</u> (9th Cir. 1992) 977 F.2d 1510, 1517 [moving party must show "either a likelihood of success on the merits and the possibility of irreparable injury, or that serious questions going to the merits were raised and the balance of hardships tips sharply in its favor"]). The "greater the relative hardship to the moving party, the less probability of success must be shown." (<u>National Ctr. for Immigrants Rights v. INS</u> (9th Cir. 1984) 743 F.2d 1365, 1369). Plaintiff's "evidence" fails to support plaintiff's request for any sort of injunctive relief.

Plaintiff has failed to establish that it is likely to prevail on any of its causes of action against defendants. While defendants do not dispute that Geller had proprietary information and that certain customers would be protected trade secret information, Geller has not attempted to limit its claims to this information or customers. Instead, in an effort to prevent Mr. Nishikawa from pursuing his own business, Geller takes the position that every customer and supplier it did business with is protected. There is no legitimate basis for this position.

Plaintiff has failed to provide any facts substantiating, for example, that the identities of and other information related to suppliers were somehow proprietary information. The vast majority of these companies are readily identifiable and do business with a number of companies such as Geller. James Geller's suggestion that the company's supplier of Japanese Wagyu beef, Poseidon Seafood, is proprietary to Geller is also inaccurate. This connection was developed by Mr. Nishikawa through his connections that preexisted his relationship with Geller.

Mr. Geller's statements that the customers developed for Wagyu purchases constitute protected information is also incorrect. These customers were largely developed by Mr. Nishikawa using information on high end restaurants readily available from sources such as the internet. Nor did Geller take any steps to protect information concerning these purchasers as proprietary. Mr. Nishikawa was permitted to maintain his own records of the customers he developed, he was not instructed that the company considered this information proprietary, and he was not asked to provide this information to the company to maintain as any central "client list."

Plaintiff's motion for TRO also appears to apply to customers and other contacts which Mr. Nishikawa brought to Geller or had relationships with before he worked for Geller. For example, the Japanese distributor who was purchasing the pork product from Mohawk had worked with Mr. Nishikawa and Geller before Mr. Nishikawa began working at Geller.

Nor has plaintiff established that there is a significant threat of irreparable injury if its overbroad TRO is not approved. Mr. Nishikawa, who is not knowledgeable about trade secret and other similar laws, had contact with three customers/suppliers after his termination (one of which was initiated by the customer, a preexisting contact of Mr. Nishikawa). Mr. Nishikawa has not engaged in any wholesale efforts to contact Geller's customers and since retaining counsel on September 19, 2007, has not had any contact with any party who could remotely be considered a Geller customer.

Given what plaintiff is requesting, the balance of hardships in this matter favors defendants. The order requested by plaintiff goes far beyond anything Geller is remotely entitled to and appears intended to prevent defendants from engaging in legitimate competition at a time that is critical for defendants. As noted above, defendants are not currently contacting any party that could be considered a customer of Geller, even though defendants are entitled to contact some of these customers. Defendants are also being contacted by companies wanting to continue doing business with Mr. Nishikawa, although they have not been solicited in any way. On the other hand, it is defendants' understanding that Geller has told companies (including companies Mr. Nishikawa had a preexisting relationship with) that pursuant to the terms of his contract with Geller, Mr. Nishikawa is not permitted to continue doing business with them.

Page 6 – C-075159 MMC
Opposition to Ex Parte Motion For Temporary Restraining Order

Defendants have not intentionally engaged in any destruction of computer files or records, nor do they intend to do so. On or about September 8 or 9, 2007 (before Mr. Nishikawa knew Geller International wanted the computer returned) while Mr. Nishikawa was trying to back up the data, the computer crashed. Mr. Nishikawa attempted to restart the computer with a recovery disk, but was unsuccessful.

### III. THE COURT SHOULD DENY PLAINTIFF'S REQUEST FOR EXPEDITED DISCOVERY

Rule 26(d) of the Federal Rules of Civil Procedure provides that "[e]xcept in categories of proceedings exempted from initial disclosure under Rule 26(a)(1)(E) [*not applicable in this case*], or when authorized under these rules or by order or agreement of the parties, a party may not seek discovery from any source before the parties have conferred as required by Rules 26(f)". The emerging view requires a plaintiff seeking expedited discovery prior to a Rule 26(f) conference to demonstrate good cause. Plaintiff's request for expedited discovery here completely fails to demonstrate any good cause for expedited discovery, or any other exemption from the sound requirements of Rule 26(d).

Where, as here, there is no demonstrated need for expedited discovery and the breadth of the discovery requests is overly broad, courts routinely reject applications for expedited discovery (see, e.g., Merrill Lynch, Pierce, Fenner & Smith, Inc. v. O'Connor (N.D.Illinois 2000) 194 F.R.D. 618, 624 [denying request for expedited discovery]). And where, as here, the request suggests a "darker view" that it is being requested for anticompetitive or punitive purposes, courts have little trouble rejecting such strong-armed litigation tactics (Gucci America, Inc. v. Daffy's, Inc. (D.N.J. 2000) 2000 U.S. Dist. LEXIS 16714).

### IV. CONCLUSION

There is no merit to plaintiff's requests for expedited discovery and a TRO. This is garden-variety litigation, commenced by an employer with the intent of interfering with a former employee's efforts to legally engage in a competitive business.

///

///

Page 7 – C-075159 MMC
Opposition to Ex Parte Motion For Temporary Restraining Order

1  The most productive method of attempting to resolve this dispute in a manner that
2  addresses the legitimate interests of both parties without running up unnecessary legal costs is for
3  the parties to sit down and attempt to negotiate an acceptable resolution. If such informal efforts
4  fail, then the parties can resume litigation.

Dated: October 22, 2007

DILLINGHAM & MURPHY
CARLA J. HARTLEY
BARBARA L. HARRIS CHIANG

By: /S/_____
Attorneys for Defendants HITOSHI NISHIKAWA
and ASIA INTERNATIONAL, INC.

# PROOF OF SERVICE

I am a citizen of the United States, and employed in the City and County of San Francisco. I am over the age of eighteen (18) years, and not a party to the within above-entitled action. My business address is 225 Bush Street, Sixth Floor, San Francisco, California 94104-4207. On October 22, 2007, I served the following document on the party listed below:

**DEFENDANTS' OPPOSITION TO PLAINTIFF'S RENEWED EX PARTE MOTION FOR TEMPORARY RESTRAINING ORDER AND FOR EXPEDITED DISCOVERY AND AN ORDER TO SHOW CAUSE REGARDING A PRELIMINARY INJUNCTION AGAINST DEFENDANTS**

XX   **(BY FAX)** By sending a true copy thereof by facsimile machine to the number listed below.

Daniel A. Croley
FUTTERMAN & DUPREE, LLP
160 Sansome Street, 17th Floor
San Francisco, CA 94104
Tel: 415-399-3840
Fax: 415-399-3838
Email: dan@dfdlaw.com
*Attorney for Plaintiff GELLER INTERNATIONAL, INC.*

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct. Executed on October 22, 2007, at San Francisco, California.

_____
Mardoux Graff

Case No. C-07-5159 MMC
PROOF OF SERVICE