DANIEL A. CROLEY (154386)
FUTTERMAN & DUPREE LLP
160 Sansome Street, 17th Floor
San Francisco, CA 94104
Telephone: (415) 399-3840
Facsimile: (415) 399-3838
dan@dfdlaw.com

*Attorneys for Plaintiff*
*Geller International, Inc.*

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| GELLER INTERNATIONAL, INC.<br><br>Plaintiff,<br><br>v.<br><br>HITOSHI NISHIKAWA and ASIA INTERNATIONAL, INC.<br><br>Defendants. | Case No. 07-05159 MMC<br><br>**DECLARATION OF STEVEN R. WALKER IN SUPPORT OF PLAINTIFF'S MOTION PRELIMINARY INJUNCTION**<br><br>Date: November 14, 2007<br>Time: 9:00 a.m.<br>Complaint Filed: October 9, 2007 |

I, STEVEN R. WALKER declare:

1. I am a partner at Iteon Consulting, LLC, a computer consulting company specializing in computer forensics. Iteon Consulting, LLC is located at 74 Tehama Street, San Francisco, California. Before starting Iteon Consulting in 2003, I was employed as the Director of Technology for Good Technology. Previous to that, I was employed as a Network Architect for Exodus Communication. Previous to that, I was employed as a Network Architect for Cohesive Systems. All three of these positions had large security and/or forensics components.

2. I work in the field of Computer Forensics. My expertise includes (but is not limited to) hard disk analysis, data analysis, network security, email analysis, and (generally) network security and computer forensics.

3. I have been working in the field of information technology since 1990, and in the more specialized fields of network security and computer forensics since approximately 1995. I have a Bachelors degree from the University of California at Berkeley. I have taken and taught many classes in the field of information technology and specifically taken and taught many classes on computer forensics and security. I use methods that are standard in both information technology and in the network security and computer forensics fields. I have been retained as a Computer Forensics expert many times, and I am current on both the technologies in question and accepted practices in my field. To the best of my knowledge, no court has rejected the forensic methodologies I use.

4. Computer forensics involves examining a computer in an attempt to learn information about what was done with, by, or to that computer. A computer forensics expert using accepted methods will (under normal circumstances) be able to examine a computer without making any changes to it, usually by using a "write-blocker" or another method to protect the original disk from being polluted. Once it has been verified that the contents of the drive are protected, analysis of the data can occur. This analysis generally includes (among other things) searches, examination of log files, examination of the operating system, application, configuration, and data files/directories and dates on those files/directories, and examination of changes made to the computer since it was installed.

5. On October 5, 2007, I completed and signed a declaration that described the findings of my forensic examination of a computer owned by Geller International, Inc. that had previously been used by Hitoshi Nishikawa. Since that time, I have read a declaration by Mr. Nishikawa (Case No. C-075159 MMC, dated October 22, 2007), which describes events that cannot be accurate based on the concrete evidence I found during my forensic examination.

6. In Paragraph 20 of Mr. Nishikawa's declaration, he states, "On or about September 8 or 9, 2007…while I was trying to back up [sic] the data, the computer again crashed [sic]. I had to restart the computer with a recovery disk." This statement cannot be true based on my forensic examination of the computer. This computer had a new operating system installed on it after it was quick-formatted on September 8 and 9, 2007 (the old operating system was the

Japanese version, the new operating system was not). The recovery disk could not have been used, as the operating system would have been the same (not different). Further, I recovered a large amount of data (both deleted and not) from before the hard drive was quick-formatted. It is not possible, based on my findings, that the statement Mr. Nishikawa makes above is true. This is also significant, because if Mr. Nishikawa had done what he claims to have done, the data would still have been visible (using the recovery process does not erase data files). Formatting a hard drive is also not something that can be done by mistake.

7. In Paragraph 13 of Mr. Nishikawa's declaration, he states that he has not "transferred any Geller International information to Asia International computers." This statement, though, is misleading because my forensic examination clearly showed that Mr. Nishikawa transferred data to a non-Geller owned hard drive before returning the laptop to Geller. My previous declaration shows the devices that were connected to the computer, including serial numbers for the hard drives and USB storage devices. In Paragraph 20, Mr. Nishikawa states "I have in my possession the external drive that I was using to attempt to back up the data." This drive (even if the data has been deleted or the drive formatted) has Geller data on it and such data should be returned to Geller.

8. Based on my 12 years of forensics and security experience, it is clear to me that the user of Geller International's computer destroyed (or attempted to destroy) Geller International intellectual property, and has attempted to hide his tracks in doing so by formatting the hard drive and reinstalling the operating system (although for the most part he did not succeed in this task).

9. It is my professional opinion that the hard drive that Mr. Nishikawa has stated he has in his possession should be provided to Geller International, as it contains Geller data, even if this data is not visible to a nonexpert. Further, the other storage devices that were used in the computer before he returned it to Geller should also be provided for forensic examination. Finally, I would advise forensic examination of the computer or computers that Mr. Nishikawa is currently using. Such a forensic examination would either prove or disprove whether

Mr. Nishikawa has transferred any of the data that was on the hard disk in his possession to one or more of his Asia International Computers.

I declare under penalty of perjury pursuant to the laws of the State of California and the Untied States that the foregoing facts are true and correct.

Signed on October 30, 2007, at San Rafael, California.

/s/
Steven R. Walker

I hereby attest that I have on file all holograph signatures for any signatures indicated by a "conformed" signature (/s/) within this efiled document.

/s/
Daniel A. Croley