DILLINGHAM & MURPHY, LLP
CARLA J. HARTLEY (SBN 117213)
BARBARA L. HARRIS CHIANG (SBN 206892)
225 Bush Street, 6th Floor
San Francisco, California 94104-4207
Telephone:     (415) 397-2700
Facsimile:     (415) 397-3300

Attorneys for Defendants and Counterclaimants
HITOSHI NISHIKAWA and ASIA INTERNATIONAL, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA – SAN FRANCISCO DIVISION

| | |
|---|---|
| GELLER INTERNATIONAL, INC., | Case No. C-075159 MMC |
| Plaintiff, | COUNTERCLAIM FOR (1) ACCOUNTING; (2) FAILURE TO PAY WAGES; (3) WAITING TIME PENALTIES; (4) UNFAIR COMPETITION; AND (5) UNFAIR COMPETITION; (6) INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE |
| v. | |
| HITOSHI NISHIKAWA, and ASIA INTERNATIONAL, INC., | |
| Defendants. | |
| | JURY TRIAL DEMANDED |
| HITOSHI NISHIKAWA, and ASIA INTERNATIONAL, INC., | |
| Counterclaimants, | |
| v. | |
| GELLER INTERNATIONAL, INC., a corporation, AND JAMES GELLER, an individual, | |
| Counterdefendants. | |

Defendants and Counterclaimants HITOSHI NISHIKAWA ("Nishikawa") and ASIA

INTERNATIONAL, INC. ("Asia International"), (collectively, "Counterclaimants") respectfully

submit this Counterclaim against Plaintiff and Counterdefendants GELLER INTERNATIONAL,

INC. ("Geller International") and JAMES GELLER ("Geller") (collectively "Counterdefendants")

and allege and aver as follows:

## JURISDICTION AND VENUE

1.      Defendant and Counterclaimant Nishikawa is an individual residing at 215 Catalina Avenue, Pacifica, California.  Nishikawa is the president of Asia International.

2.      Defendant and Counterclaimant Asia International, Inc. is a California corporation, with its principal place of business in Pacifica, California.

3.      Counterclaimants are informed and believe, and on that basis allege and aver, that Counterdefendant Geller International is a California corporation with its principal place of business located in Burlingame, California.

4.      Counterclaimants are informed and believe, and on that basis allege and aver, that Counterdefendant Geller is an individual residing in California.  Geller is the president of Geller International.

5.      Subject matter jurisdiction is accordingly vested in the United States District Court for the Northern District California by virtue of 28 U.S.C. § 1367.

6.      Counterclaimants are informed and believe, and on that basis allege and aver, that venue is appropriate in this Judicial District because some portion of the acts or omissions giving rise to these counterclaims occurred in the Northern District of California, because the acts and omissions giving rise to the counterclaims asserted herein are based on the operative facts giving rise to the Complaint on file in this action, and each of the Counterdefendants is subject to personal jurisdiction in the Northern District of California.

## FACTUAL BACKGROUND

7.      Nishikawa has worked in the food import/export business for over 25 years. In April 2003, he became an employee of Geller International.  A copy of the Employment Contract signed by Nishikawa is attached hereto as Exhibit A.  At the time Nishikawa joined Geller International, it was not selling products to restaurants and was not involved in the importation of Wagyu beef from Japan.

8.      Nishikawa used his pre-existing contacts to develop new business for Geller International.  Following the Japanese ban on importation of American beef and the United States

1   lifting the ban on the importation of Japanese beef in March 2005, Nishikawa established a
2   relationship with a company who was authorized to import Japanese beef to the United States.
3   Nishikawa and Geller then used readily ascertainable public sources such as the Internet to locate
4   high end restaurants that were potentially interested in purchasing beef and contacted them in an
5   effort to solicit business.  This business ended up being quite successful and profitable for
6   Counterdefendant.

7           9.      Pursuant to the terms of Counterclaimant Nishikawa's employment agreement with
8   Counterdefendant, in April 2004 and April 2007, was to offer him an ownership interest in the
9   company.  Nishikawa was not interested in pursuing any partnership interest prior to 2007 because
10  Geller told him that if he became a partner his commission would be reduced.

11          10.     In August 2007, Nishikawa advised Geller, president of Geller International, that
12  there had been miscalculating his commissions for the previous year.  Geller told Nishikawa that
13  he was sorry he felt that way and said he would see if he could come up with a better proposal and
14  mentioned the possibility of a partnership.  Nishikawa advised that if something could not be
15  worked out he was going start his own company on October 1, 2007.  Geller told Nishikawa that
16  he would get back to him.

17          11.     When Nishikawa did not hear back from Geller, he approached Geller again on
18  September 5, 2007, and asked what his thoughts were regarding the proposed partnership.  Geller
19  suggested Nishikawa would get a share of the business, however, Nishikawa was dissatisfied with
20  the proposal because he was the one who had developed the business at Geller International and
21  was generating the majority of its business. Geller told him to pack up his stuff, leave and not
22  come back.

23          12.     To date Nishikawa has not received all earned commissions or been reimbursed for
24  all business expenses incurred during his employment with Geller International.

25  //
26  //
27  //
28  //

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**FIRST CLAIM FOR RELIEF**

**(ACCOUNTING FOR COMMISSIONS AND UNREIMBURSED EXPENSES)**

**(BY COUNTERCLAIMANT NISHIKAWA AGAINST COUNTERDEFENDANT GELLER**

**INTERNATIONAL)**

13.     Counterclaimants Nishikawa and Asia International reallege and incorporate herein by reference as though fully set forth the allegations of paragraphs 1 through 12, inclusive, of this Counterclaim.

14.     Nishikawa was hired by Geller International on or about April 11, 2003 as an employee with the title of General Manager.  The parties entered into an Employment Agreement that is attached hereto as Exhibit A.

15.     Pursuant to the terms of the Employment Agreement, Geller International was to pay Nishikawa "70% of the net profit from cash sale.  Payable within 15 days of the closing of such sale, and the final payment being received from the bank or customer.  In addition to the foregoing, employer will reimburse Contractor for any and all necessary, customary, and unusual expense incurred by him while traveling for and on behalf of the employers pursuant to employer's direction."

16.     In accordance with the Employment Agreement, Nishikawa diligently and faithfully rendered his services to Geller International and performed all of the terms and conditions of the contract on his part to be performed.  On September 5, 2007, Geller abruptly terminated Nishikawa's employment after Nishikawa complained that Geller International was cheating him out of a portion of his commissions in accordance with the Employment Agreement.

17.     Between April 2003 and September 5, 2007, Geller International entered into sales transactions with various entities and received a profit, a portion of which is due and owing to Nishikawa.  Geller International, however, has not accounted for the profits and has not paid Nishikawa his full share.  Specifically, Nishikawa is informed and believes that Geller International improperly deducted expenses in excess of the actual cost from his commission. Nishikawa has never been reimbursed for the improper deductions.

18.     Nishikawa does not know the precise amount of compensation or improperly

charged expenses he is owed, because such amounts can only be determined by an accounting of Geller International's books and records.

19.    Nishikawa has demanded an accounting by Counterdefendant Geller International of the transactions on which his compensation can be ascertained, and has demanded payment of the compensation due him based on such profits.  Counterdefendant has failed and refused, and continues to fails and refuses, to make such an account or to pay Nishikawa the compensation due to him.

### SECOND CLAIM FOR RELIEF

### (FAILURE TO PAY WAGES)

### (BY COUNTERCLAIMANT NISHIKAWA AGAINST COUNTERDEFENDANT GELLER INTERNATIONAL)

20.    Counterclaimants Nishikawa and Asia International reallege and incorporate herein by reference as though fully set forth the allegations of paragraphs 1 through 19, inclusive, of this Counterclaim.

21.    Counterclaimants are informed and believe, and on that basis allege and aver, that Geller International has willfully and knowingly failed to accurately calculate and pay Nishikawa's commission from April 2003 to September 5, 2007.

22.    Pursuant to California Labor Code § 218 and § 218.5, Counterclaimant Nishikawa is entitled to an award of damages against Counterdefendant Geller International for unpaid wages, in an amount to be proven at trial, plus interest and reasonable costs and attorneys' fees.

23.    Pursuant to Labor Code § 201 and the Wage Orders, Counterdefendant was required to pay all wages earned and unpaid at the time of discharge.

### THIRD CLAIM FOR RELIEF

### (WAITING TIME PENALTIES)

### (BY COUNTERCLAIMANT NISHIKAWA AGAINST COUNTERDEFENDANT GELLER INTERNATIONAL)

24.    Counterclaimants Nishikawa and Asia International reallege and incorporate herein by reference as though fully set forth the allegations of paragraphs 1 through 23, inclusive, of this

1  Counterclaim.

2      25.    Counterdefendant failed to pay all wages owed at the time of Nishikawa's

3  termination, contrary to Labor Code § 201.

4      26.    If an employer willfully fails to pay wages in accordance with Labor Code § 201,

5  the employee is entitled to waiting time penalties for up to 30 days (Labor Code § 203).

6      27.    Counterclaimant Nishikawa is informed and believes and thereon alleges that

7  Counterdefendant failure to fully pay all commissions was willful, thereby resulting in a 30 day

8  waiting time penalty pursuant to Labor Code § 203.  Counterclaimant Nishikawa is entitled to

9  payment of reasonable attorneys' fees and costs of suit in recovering the additional pay pursuant

10 to Labor Code § 218.5 and interest pursuant to Labor Code § 218.6.

11                    **FOURTH CLAIM FOR RELIEF**

12 **(UNFAIR COMPETITION-CAL. BUSINESS & PROFESSIONS CODE §§ 17200 ET SEQ.)**

13 **(BY COUNTERCLAIMANT NISHIKAWA AGAINST COUNTERDEFENDANT GELLER**

14                        **INTERNATIONAL)**

15     28.    Counterclaimants Nishikawa and Asia International reallege and incorporate herein

16 by reference as though fully set forth the allegations of paragraphs 1 through 27, inclusive, of this

17 Counterclaim.

18     29.    Unfair competition includes any unlawful, unfair or fraudulent business act or

19 practice and unfair, deceptive, untrue or misleading advertising and any act prohibited by Chapter

20 1 (commencing with Section 17500) of Part 3 of Division 7 of the Business and Professions Code

21 (Business and Professions Code § 17200 et seq.).

22     30.    Counterdefendant failed to pay Counterclaimant Nishikawa all commissions in

23 violation of Labor Code § 201, the Wage Orders, and other authority under California law.  Such

24 actions and/or conduct constitutes a violation of the California Unfair Competition Law (UCL),

25 Business and Professions Code § 17200 et. seq.

26     31.    As a direct result of the conduct of Counterdefendant Geller International, pursuant

27 to the UCL including B & P Code § 17200), Counterclaimant Nishikawa is entitled to restitution

28 and as a result of Counterdefendant's unfair business practices, including but not limited to,

disgorgement of all unpaid wages, interest, penalties and costs pursuant to Bus. & Prof. §§ 17203 and 17208, all amounts as yet unascertained and subject to proof at trial

32.    As a direct and legal result of the conduct of Counterdefendant, as alleged herein, pursuant to the UCL (including Bus. & Prof. §§ 17203), Nishikawa is entitled to restitution as a result of Counterdefendant's unfair business practices, including recovering all unpaid wages, interest, and penalties incurred during the last four years of him employment with Counterdefendant, all in an amount yet ascertained but subject to proof at trial.

**FIFTH CLAIM FOR RELIEF**

**(UNFAIR COMPETITION-CAL. BUSINESS & PROFESSIONS CODE §§ 17200 ET SEQ.)**

**(BY COUNTERCLAIMANT NISHIKAWA AGAINST COUNTERDEFENDANT GELLER INTERNATIONAL)**

33.    Counterclaimants Nishikawa and Asia International reallege and incorporate herein by reference as though fully set forth the allegations of paragraphs 1 through 32, inclusive, of this Counterclaim.

34.    Unfair competition includes any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising and any act prohibited by Chapter 1 (commencing with Section 17500) of Part 3 of Division 7 of the Business and Professions Code (Business and Professions Code § 17200 et seq.).

35.    Business and Professions Code § 166000 provides "every contract by which anyone is restrained from engaging in a lawful profession, trade, or business of any kind is to that extent void."

36.    Section 7 of the Employment Agreement titled "NONDISCLOSURE OF INFORMATION CONCERNING BUSINESS" executed by Nishikawa and Geller International is overly broad and effectively retrains Counterclaimant Nishikawa from engaging in his lawful profession, trade and business of over twenty five (25) years. Such restraint constitutes a violation of the California Unfair Competition Law (UCL), Business and Professions Code § 17200 et. seq.

37.    As a direct result of the conduct of Counterdefendant Geller Intentional, pursuant to the UCL including B & P Code § 17200), Counterclaimant is entitled to restitution and as a

1    result of Counterdefendant's unfair business practices, including but not limited to, disgorgement

2    of all unpaid wages, interest, penalties and costs pursuant to Bus. & Prof. §§ 17203 and 17208, all

3    amounts as yet unascertained and subject to proof at trial

4        38.    As a direct and legal result of the conduct of Counterdefendant, as alleged herein,

5    pursuant to the UCL (including Bus. & Prof. §§ 17203), Nishikawa is entitled to restitution as a

6    result of Counterdefendant's unfair business practices, an amount yet ascertained but subject to

7    proof at trial, plus attorneys' fees and costs.

8                        **SIXTH CLAIM FOR RELIEF**

9              **(INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE)**

10       **(BY COUNTERCLAIMANTS NISHIKAWA AND ASIA INTERNATIONAL AGAINST**

11            **COUNTERDEFENDANTS GELLER INTERNATIONAL AND GELLER)**

12       39.    Counterclaimants Nishikawa and Asia International reallege and incorporate herein

13    by reference as though fully set forth the allegations of paragraphs 1 through 38, inclusive, of this

14    Counterclaim.

15       40.    Prior to working for Geller International, Counterclaimant Nishikawa enjoyed

16    business relationships with numerous customers in Japan, China, Taiwan, and Korea ("pre-Geller

17    customers").

18       41.    When Counterclaimant Nishikawa began working for Counterdefendant he

19    continued and maintained the business relationships with his pre-Geller customers.

20       42.    Counterdefendants were aware of Nishikawa's prior business relationships with

21    Nishikawa's pre-Geller customers.

22       43.    In addition, Counterclaimant Nishikawa developed additional business contacts and

23    relationships while employed by Counterdefendant Geller International which were not and are

24    not Counterdefendant's trade secrets, proprietary or confidential information.

25       44.    Counterclaimants are informed believe, in order to keep Nishikawa and Asia

26    International from lawfully competing in the marketplace, upon terminating Nishikawa,

27    Counterdefendants intentionally and falsely advised one or more of Nishikawa's pre-Geller

28    customers and contacts that they were prohibited from conducting business with Nishikawa and

Asia International.

45.    Counterdefendants' intentional misrepresentation to said customers and contacts was intended to disrupt Nishikawa and Asia International's relationship with Nishikawa's customers and prevent Counterclaimants from lawfully competing with Counterdefendants.

46.    Counterdefendants conduct caused an actual disruption of the relationship between Nishikawa in that the customer declined to do business with Nishikawa and Asia International.

47.    Counterdefendants conduct threatens to cause Nishikawa and Asia International to lose existing and potential customers and/or business, proximately causing economic harm to Counterclaimants.

48.    Counterclaimants are informed and believe that Counterdefendants have continued to engage in the conduct complained herein.  Unless restrained and enjoined, Counterdefendants will continue to do irreparable harm to Counterclaimants.  Counterclaimants have no adequate remedy at law, and money damages cannot fully compensate for the injury.  Counterclaimants are entitled to injunctive relief prohibiting Counterdefendants from interfering and disrupting Counterclaimants business relationships in addition to restitution and disgorgement of any benefits acquired by means of acts referenced herein.

WHEREFORE, Counterclaimant prays for judgment against Counterdefendant, as follows:

1.    For an accounting of wages owed to Counterclaimant;

2.    For an award of damages for unpaid wages owed to Counterclaimant Nishikawa, in an amount to be proven at trial;

3.    For prejudgment interest and interest on the sum of damages awarded to the maximum extent permitted by law;

4.    For waiting time penalties, according to proof;

5.    For injunctive relief prohibiting Counterdefendants from interfering and disrupting Counterclaimants business relationships;

6.    For restitution and disgorgement of any benefits acquired by means of acts alleged above;

7.    For reasonable attorneys' fees according to proof;

8.      For costs of suit incurred; and

9.      For such other and further relief as the court deems just and proper.

### Jury Trial Demand

Counterclaimants demand a trial by jury of all issues so triable.


Dated:  November 1, 2007                          DILLINGHAM & MURPHY
                                                  CARLA J. HARTLEY
                                                  BARBARA L. HARRIS CHIANG


                                  By:     /s/_____
                                          Attorneys for Defendants and Counterclaimants
                                          HITOSHI NISHIKAWA and ASIA
                                          INTERNATIONAL, INC.

Exhibit A

**Geller International. Inc.**
**1799 Old Bayshore Hwy, Burlingame, Calif. 94010 ~ USA**
**Phone 650-692-6488 ~ Fax 650-692-5088**
**E-mail: jgeller@gellerinternational.com**

EMPLOYMENT AGREEMENT

This Agreement made and entered into this 11th day of April, 2003,
By and between GELLER INTERNATIONAL, INC ("employer"), and HITOSHI NISHIKAWA
("CONTRACTOR-COMMISION SALES"). The parties recite that:

A. Employer is engaged in IMPORT/EXPORT SALES, OF U.S. FOODS, and maintains business premises
at
1799 Old Bayshore Hwy, Burlingame, Ca USA.

B. Mr. Nishikawa is willing to be contracted by employer, and employer is
Willing to contract Mr. Nishikawa, on the terms and conditions hereinafter set
Forth. For the reasons set forth above, and in consideration of the
Mutual covenants and promises of the parties hereto, employer and
Contractor covenant and agree as follows:

1. AGREEMENT to contract for sales & management services.
   Employer hereby contracts Mr. Nishikawa at the above-mentioned
Premises, and contractor hereby accepts and agrees to such employment.

2. DESCRIPTION OF CONTRACTOR'S DUTIES
   Subject to the supervision and pursuant to the orders, advice, and
direction of employer, contractor shall perform such duties as are
customarily performed by one holding such position in other businesses or
enterprises of the same or similar nature as that engaged in by employer.
Contractor shall additionally render such other and unrelated services and
Employer may assign duties as to him from time to time.

3. MANNER OF PERFORMANCE OF CONTRACTOR'S DUTIES
   Contractor shall at all times faithfully, industriously, and to the best
of his ability, experience, and talent, perform all duties that may be
required of and from him pursuant to the express and implicit terms
hereof, to the reasonable satisfaction of employer. Such duties shall be
rendered at the abovementioned premises and at such other place or places
as employer shall in good faith require or as the interests, needs,
business, and opportunities of employer shall require or make advisable.

4. DURATION OF EMPLOYMENT
   The term of contract-employment shall be 1 year(s) at stage 1,
commencing on April 14th, 2003. On or about April 1 2004, the terms for stage 2
will be negotiated and Mr. Nishikawa will have the option to remain at
the current terms of contract-employment with a sales commission pay structure,
or have the option to change from a contractor on a sales commission basis, to
employment with salary & commission basis. On or about April 1, 2004 Mr. Nishikawa
will have the option to change his status of his employment with an opportunity to buy
into a limited partnership at 5% ownership. An additional 5% ownership will be offered
to Mr. Nishikawa at the commencement of his 4 th year of employment at Geller International, Inc.

5. COMPENSATION; REIMBURSEMENT
   Employer shall pay Contractor and Contractor agrees to accept from

employer, in full payment for Contractor's services hereunder, compensation
at the rate of 70% of the net profit from each sale. Payable within 15 days
of the closing of such sale, and the final payment being received from the
bank, or customer.
In addition to the foregoing, employer will reimburse Contractor for any
and all necessary, customary, and usual expenses incurred by him while
traveling for and on behalf of the employer pursuant to employer's
directions.

Employer will offer, for the 1st 3 months (April, May June 2003) a sum of
US $5,000.00 per month, as a draw against future commissions. Mr. Nishikawa,
by signing of this agreement, agrees to re-pay Employer the sum of US$ 1,000.00
per month for 15 months, until the load is paid in full. No interest will be levied
against this draw on commissions.

## 6. CONTRACTOR'S LOYALTY TO EMPLOYER'S INTERESTS

Contractor shall devote all of his time, attention, knowledge, and skill
solely and exclusively to the business and interests of employer, and
employer shall be entitled to all benefits, emoluments, profits, or other
issues arising from or incident to any and all work, services, and advice
of Contractor. Contractor expressly agrees that during the term hereof he
will not be interested, directly or indirectly, in any form, fashion, or
manner, as partner, officer, director, stockholder, advisor, Contractor, or
in any other form or capacity, in any other business similar to
employer's business or any allied trade, except that nothing herein
contained shall be deemed to prevent or limit the right of Contractor to
invest any of his surplus funds in the capital stock or other securities
of any corporation whose stock or securities are publicly owned or are
regularly traded on any public exchange, nor shall anything herein
contained by deemed to prevent Contractor from investing or limit
Contractor's right to invest his surplus funds in real estate.

## 7. NONDISCLOSURE OF INFORMATION CONCERNING BUSINESS

Contractor will not at any time, in any fashion, form, or manner, either
directly or indirectly divulge, disclose, or communicate to any person,
firm, or corporation in any manner whatsoever any information of any
kind, nature, or description concerning any matters affecting or relating
to the business of employer, including, without limitation, the names of
any its customers, the prices it obtains or has obtained, or at which it
sells or has sold its products, or any other information concerning the
business of employer, its manner of operation, or its plans, processes,
or other date of any kind, nature, or description without regard to
whether any or all of the foregoing matters would be deemed confidential,
material, or important. The parties hereby stipulate that, as between
them, the foregoing matters are important, material, and confidential,
and gravely affect the effective and successful conduct of the business
of employer, and its good will, and that any breach of the terms of this
section is a material breach of this agreement.

## 8. OPTION TO TERMINATE ON PERMANENT DISABILITY OF CONTRACTOR

Not withstanding anything in this agreement to the contrary, employer
is hereby given the option to terminate this agreement in the event that
during the term hereof Contractor shall become permanently disabled, as the
term "permanently disabled" is hereinafter fixed and defined. Such
option shall be exercised by employer giving notice to Contractor by
registered mail, addressed to him in care of employer at the above stated

address, or at such other address as Contractor shall designate in writing, of its intention to terminate this agreement on the last day of the month during which such notice is mailed. On the giving of such notice this agreement and the term hereof shall cease and come to an end on the last day of the month in which the notice is mailed, with the same force and effect as if such last day of the month were the date originally set forth as the termination date. For purposes of this agreement, Contractor shall be deemed to have become permanently disabled if, during any year of the term hereof, because of ill health, physical or mental disability, or for other causes beyond his control, he shall have been continuously unable or unwilling or have failed to perform his duties hereunder for thirty (30) consecutive days, or if, during any year of the term hereof, he shall have been unable or unwilling or have failed to perform his duties for a total period of thirty (30) days, whether consecutive or not. For the purposes hereof, the term "any year of the term hereof" is defined to mean any period of 12 calendar months commencing on the first Day of April and terminating on the last day of April of the following year during the term hereof.

## 9. DISCONTINUANCE OF BUSINESS AS TERMINATION OF EMPLOYMENT
Anything herein contained to the contrary notwithstanding, in the Event that employer shall discontinue operations at the premises mentioned above, then this agreement shall cease and terminate as of the last day of the month in which operations cease with the same force and effect as if such last day of the month were originally set forth as the termination date hereof.

## 10. CONTRACTOR'S COMMITMENTS BINDING ON EMPLOYER ONLY ON WRITTEN CONSENT
Contractor shall not have the right to make any contracts or other commitments for or on behalf of employer without the written consent of employer.

## 11. CONTRACT TERMS TO BE EXCLUSIVE
This written agreement contains the sole and entire agreement between The parties, and supersedes any and all other agreements between them. The parties acknowledge and agree that neither of them has made any representation with respect to the subject matter of this agreement or any representations inducing the execution and delivery hereof except such representations as are specifically set forth herein, and each party acknowledges that he or it has relied on his or its own judgment in entering into the agreement. The parties further acknowledge that any statements or representations that may have heretofore been made by either of them to the other are void and of no effect and that neither of them has relied thereon in connection with his or its dealings with the other.

## 12. WAIVERS OR MODIFICATION INEFFECTIVE UNLESS IN WRITING
No waiver or modification of this agreement or of any covenant, condition, or limitation herein contained shall be valid unless in writing and duly executed by the party to be charged therewith. Furthermore, no evidence of any waiver or modification shall be offered or received in evidence in any proceeding, arbitration, or litigation between the parties arising out of or affecting this agreement, or the rights or obligations of any party hereunder, unless such waiver or modification is in writing, duly executed as aforesaid. The provisions of this paragraph may not be waived except as herein set forth.

13. CONTRACT GOVERNED BY LAW
   This agreement and performance hereunder shall be construed in
accordance with the laws of the State of California.

14. BINDING EFFECT OF AGREEMENT
   This agreement shall be binding on and inure to the benefit of
The respective parties and their respective heirs, legal
representatives, successors, and assigns.

15. Health benefits, in year 1 for Mr. Nishikawa are to be paid by Mr. Nishikawa. (*)
   Health benefits, in year 2 and forward, for Mr. Nishikawa are to be paid by the employer
   Should Mr. Nishikawa join the company as an employee, but not paid should he remain
   as a contractor.
   (*) The employer will consider payment of health benefits in year one, after 6
   Months of employment are complete, based on the employees sales and generation
   of profits.

Executed on the date first above written.

_____, Employer          _____, Contractor

James M. Geller  Date: 4/11/03             Hitoshi Nishikawa  date: 4-11-2003