1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

DILLINGHAM & MURPHY, LLP
CARLA J. HARTLEY (SBN 117213)
BARBARA L. HARRIS CHIANG (SBN 206892)
225 Bush Street, 6th Floor
San Francisco, California 94104-4207
Telephone:      (415) 397-2700
Facsimile:      (415) 397-3300

Attorneys for Defendants and Counterclaimants
   HITOSHI NISHIKAWA and
   ASIA INTERNATIONAL, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA – SAN FRANCISCO DIVISION

GELLER INTERNATIONAL, INC.,

                    Plaintiff,

        v.

HITOSHI NISHIKAWA, and ASIA
INTERNATIONAL, INC.,

                    Defendants.

AND RELATED COUNTERCLAIMS.

Case No. C-075159 MMC

**DEFENDANTS' OPPOSITION TO PLAINTIFF'S APPLICATION FOR A PRELIMINARY INJUNCTION**

Date:  November 14, 2007
Time:  9:00 a.m.
Complaint filed:  October 9, 2007

## I.    <u>INTRODUCTION</u>

Plaintiff GELLER INTERNATIONAL ("Geller") purports to seek to restrain its former General Manager, defendant HITOSHI NISHIKAWA ("Nishikawa") and his new company, defendant ASIA INTERNATIONAL, INC. ("Asia International") from contacting certain customers and suppliers, contending that they are protected trade secrets and confidential information.  However, in fact, plaintiff's lawsuit and application are preemptive efforts to prevent Mr. Nishikawa, who was an employee terminated by Geller, from lawfully competing with Geller**.**

Plaintiff seeks a preliminary injunction continuing the terms of the order granting preliminary injunction issued by Judge Maxine M. Chesney on October 23, 2007.  Defendants oppose a preliminary injunction on these grounds as follows:

1) Defendants are enjoined from deleting or destroying or permitting anyone to delete or destroy any electronic files under the e-mail address of hitoshinishikawa@sbcglobal.net.

<u>Defendants' position</u>:  No opposition.

2) Defendants are enjoined from disclosing to any third party the content of any data taken from Plaintiff, including but not limited to from Geller-issued laptop computer.  Defendants are enjoined from transferring, sending or transmitting to any third party any files or electronic information belonging to Plaintiff.

<u>Defendants' position</u>:  Defendants oppose this order to the extent it is vague and ambiguous as to what is "data taken from Plaintiff," and to the extent it applies to non-proprietary, nonconfidential data.  Specifically, defendants request:

(a)  That documents necessary to prosecute their counterclaims be excluded from this order.  These documents consist of spreadsheets created by Mr. Nishikawa to track his commissions, commission reports he received from Geller, and copies of FedEx charges.

(b) That documents and data related to Mr. Nishikawa's pre-existing customers, suppliers and contacts be excluded from this order, that contact information related to certain Wagyu customers be excluded from this order, and that contact information for Poseidon Seafood be excluded from this order.

1    3) Defendants are enjoined from, directly or indirectly, suing or disclosing any and all of

2  Plaintiff's supplier, vendor and pricing information that he has in his possession or control.

3    Defendants' position:  Defendants oppose this order to the extent it is vague and ambiguous

4  as to who are plaintiff's "suppliers" and "vendors" and to the extent it applies to Poseidon Seafood.

5    4) Defendants are directed to immediately return to Geller all electronic data (plus any

6  hardcopies) from any device, including but not limited to from the Geller-issued laptop and not to

7  access such data at any time in the future.

8    Defendants' position:  Defendants oppose this order to the extent it is not limited to Geller

9  electronic data and is otherwise vague and ambiguous as to what "electronic data" it applies to.

10  Defendants also oppose this order to the extent it applies to hard copies of the spreadsheets Mr.

11  Nishikawa prepared to track his commissions, which were at one point in electronic form.

12    6)  Defendants and any other acting in concert with either of them are enjoined from,

13  directly or indirectly, using or disclosing any and all confidential information regarding Plaintiff's

14  customers or suppliers that Nishikawa obtained during the course of its relationship with Geller.

15  Nothing in this Order shall preclude the Defendants from using or disclosing publicly available

16  information regarding food customers.

17    Defendants' position:  Defendants oppose this order to the extent it is vague and ambiguous

18  as to what is "confidential information" regarding plaintiff's customers or suppliers and to the

19  extent it precludes defendants from contacting and or soliciting business from certain Wagyu

20  customers and Poseidon Seafood.

21    9)  Further, nothing in this Order shall preclude the employee Defendants from soliciting

22  business from customers of Plaintiff as long as the employee or agents of Defendants do not use or

23  disclose Plaintiff's confidential information while doing so; provided they also comply with

24  Paragraphs 2 and 3 above.

25    Defendants' position:  This order should be extended to apply to plaintiff's suppliers in

26  addition to customers.

27    In this case, as set forth below, plaintiff has failed to satisfy its burden of proof justifying a

28  preliminary injunction as broad as that requested.

## II.     STATEMENT OF FACTS

Mr. Nishikawa has worked in the food import/export business for over 25 years, specializing in developing business for Asian customers.  This business included selling Wagyu beef in the United States through connections he had with a farmers' cooperative in Japan, Zennoh.

In April 2003, Mr. Nishikawa began working for Geller International.  At the time Mr. Nishikawa joined Geller, Geller was not selling products to restaurants and was not involved in the sale of Wagyu beef.

Mr. Nishikawa used his extensive pre-existing contacts to develop new business for Geller.  In approximately March 2005, the United States lifted the ban on the importation of Japanese beef.  Mr. Nishikawa's contact, Zennoh, which was no longer importing beef to the United States, nominated Poseidon Seafood as an importer of Wagyu.  Zennoh introduced Mr. Nishikawa to Poseidon.  In addition, Zennoh was also involved in recommending what purchasers Poseidon should do business with.  As a result of his longstanding relationship with Zennoh, Mr. Nishikawa was able to purchase Wagyu from Poseidon for Geller.

Mr. Nishikawa then sought customers for the Wagyu as he had in the past.  He utilized sources such as the internet to locate high end restaurants across the country and contacted them to see if they were interested in purchasing imported Wagyu.  Mr. Nishikawa and Mr. Geller both developed customers through this method and the Wagyu business ended up being quite successful and profitable for Geller.

In August and again in September 2007, Mr. Nishikawa approached Mr. Geller about an ownership interest in the business or a partnership.  On September 5, 2007, the two men were unable to reach an agreement on a partnership and Mr. Geller terminated Mr. Nishikawa's employment.

Mr. Geller initially asked Mr. Nishikawa to leave laptop computer Geller had purchased for him, but Mr. Nishikawa proposed that he keep the computer in lieu of reimbursement for money he contributed to the purchase of a refrigerator for the company.  Mr. Nishikawa understood that this arrangement was acceptable because Mr. Geller did not indicate otherwise and watched as Mr. Nishikawa packed up his belongings and left.

On September 10, 2007, Geller's then counsel, Paul J. Drenthal, sent a letter which, among other things, demanded that Mr. Nishikawa return this computer.  Mr. Nishikawa was in Hawaii from September 10 through 15 and did not see the letter until Saturday, September 15.  He promptly returned the computer to Geller the next business day, September 17.

After Geller terminated Mr. Nishikawa's employment, Mr. Nishikawa took steps to form his own business.  Plaintiff's moving papers detail contact Mr. Nishikawa had with Geller's alleged customers after he was terminated, but persist in misrepresenting the details of this contact, as follows:

1)    Mr. Nishikawa did not "usurp" or "steal" a scallops order from Geller.  He did have contact with the parties to that sale, but did not broker the deal and never received any compensation related to it.

2)    Mr. Nishikawa contacted Mohawk Packing Company to inquire about placing a pork order after he was asked to do so by a Japanese customer who had done business with both Mr. Nishikawa and Geller in the past.  When Mohawk indicated it would not accept the order from him, Mr. Nishikawa made no further efforts with respect to this sale.

3)    Mr. Nishikawa contacted Prime One Twelve restaurant in Miami.  This was a Wagyu customer he developed through the means described above.  His contact with Prime One Twelve had nothing to do with seeing a package addressed to the company at Geller's office.  Prime One Twelve has never placed an order with Mr. Nishikawa and he has never received any compensation related to Prime One Twelve since leaving Geller.

Mr. Nishikawa has also had discussions with Poseidon regarding both Wagyu and blue fin tuna.  After the temporary restraining order was issued, defendants' counsel spoke to plaintiff's counsel, who took the position that Poseidon was covered by the order.  Since that time, Mr. Nishikawa has not contacted Poseidon further, although Poseidon has contacted Mr. Nishikawa several times.

On or about September 26, 2007, Mr. Nishikawa also sent out announcements concerning the formation of Asia International to approximately 12 companies, including customers and suppliers who worked with Geller (see Nishikawa Declaration).  Other than this, Mr. Nishikawa has

not had any contact with any alleged customer or supplier of Geller.

### III.    ARGUMENT

**A.    Geller Has Failed to Establish the Criteria Necessary For the Preliminary Injunction Requested**

In seeking a preliminary injunction, a plaintiff bears the burden of showing: "(1) a likelihood of success on the merits and the possibility of irreparable injury; or (2) the existence of serious questions going to the merits and the balance of hardships tipping sharply in [its] favor." *Lands Council v. Martin*, 479 F.3d 636 (9th Cir.2007). These two formulations are not different tests, but merely extremes on a single continuum: "the less certain the district court is of the likelihood of success on the merits, the more plaintiffs must convince the district court that the public interest and balance of hardships tip in their favor." *Sw. Voter Registration Educ. Project v. Shelley*, 344 F.3d 914, 918 (9th Cir. 2003) (en banc) (per curiam).

In this case, plaintiff's application focuses on attacking defendants' credibility and fails to demonstrate the criteria necessary for the preliminary injunction plaintiff seeks.

**B.    Matters At Issue**

There are really only four matters at issue with regard to the preliminary injunction: (1) whether defendants are entitled to contact and solicit business from certain Wagyu customers developed while Mr. Nishikawa was employed by Geller; (2) whether defendants may contact and do business with Poseidon Seafood, a Wagyu and seafood supplier; (3) whether copies of spreadsheets in Mr. Nishikawa's possession which he created for the specific purpose of tracking his commissions, must be returned to Geller; and (4) whether defendants are precluded from using or retaining Rolodex cards for contacts developed during Mr. Nishikawa's employment with Geller.

**C.    Geller is Unlikely to Prevail**

**1.    Plaintiff Has Failed to Meet its Burden of Establishing that the Wagyu Buyers and Poseidon Seafood are Protected as Trade Secrets**

In order to prevail on a claim for misappropriation of information "plaintiff must show that (1) the misappropriated information constitutes a trade secret, (2) the defendant 'used' the trade secret, and (3) the plaintiff was actually damaged by the misappropriation or the defendant was

1   unjustly enriched by such misappropriation and use." *FAS Technologies, Ltd. v. Dainippon Screen*

2   *Mfg., Co., Ltd*., (N.D. Cal. May 31, 2001) 2001 WL 637451, at *3 (internal citations omitted).  It is

3   plaintiff's burden to identify the trade secrets, establish the existence of such secrets, and describe

4   the subject matter of the trade secret information with sufficient particularity:

5       A plaintiff seeking relief for misappropriation of trade secrets 'must identify the trade
    secrets and carry the burden of showing that they exist.' *MAI Sys. Corp. v. Peak Computer,*

6       *Inc*., 991 F.2d 511, 522 (9th Cir.1993). The plaintiff 'should describe the subject matter of
    the trade secret with sufficient particularity to separate it from matters of general knowledge

7       in the trade or of special knowledge of those persons ... skilled in the trade.' U*niversal*
    *Analytics v. MacNeal-Schwendler Corp*., 707 F.Supp. 1170, 1177 (C.D.Cal.1989) (citation

8       omitted) (emphasis added), aff'd, 914 F.2d 1256 (9th Cir.1990).

9       *Imax Corp. v. Cinema Technologies, Inc.* (9th Cir) 152 F.3d 1161, 1164-1165.

10       "For equitable protection, it generally must be shown that a customer list was in fact a trade

11   secret or confidential information, and not generally known or publicly available." *Mayview Corp.*

12   *v. Rodstein* (9th Cir. 1973) 480 F.2d 714, 718 (citations omitted).

13       Here plaintiff has failed to carry its burden: plaintiff has failed to identify the alleged

14   customers and suppliers which it attempts to preclude defendants from soliciting.[1]

15       Plaintiff has also failed to show that the customer information that Mr. Nishikawa allegedly

16   misappropriated constitutes a "trade secret".  Under California Civil Code section 3426.1 (d) a trade

17   secret is defined:

18           [I]nformation, including a formula, pattern, compilation, program, device, method,
    technique, or process, that:

19           (1) derives independent economic value, actual or potential, from not being generally
    known to the public or to other persons who can obtain economic value from its disclosure

20       or use; and
        (2) Is the subject of efforts that are reasonable under the circumstances to maintain

21       its secrecy.

22       Jim Geller's declaration fails to provide the requisite evidentiary showing to establish that

23   the alleged information concerning Geller's customers and suppliers is trade secret information.

24   Mr. Geller makes conclusory statements that are not supported with facts.  For example in

25   paragraph 4:14-15 he states that "GI has spent considerable resources developing confidential and

26   trade secret information."   There is no explanation of what resources were used to develop the

27   ───────────────
[1] Under a pragmatic analysis, this required description also makes sense.  Unless plaintiff sets forth

28   in writing the names of the customers and suppliers it seeks to keep defendants from doing business
with, defendants are left in the dark as to who is off limits.

1    information other than Jim Geller's alleged "personal efforts".  He also states what he considers

2    confidential information including customer contact information, buying habits and preference and

3    order history; and suppler names, contact information, product availability, pricing, transaction

4    habits and preferences, and claims this information is not generally known in the marketplace.

5    Defendants dispute these claims.  Information on restaurants is readily accessible through Internet

6    searches on site such as Opentable.com, Gayout.com, and other lists that name top restaurants

7    around the country.  (Nishikawa Decl. ¶ 8).  In today's world restaurants post their menus online,

8    making it very easy for any salesperson to determine what kind of product they use on a regular

9    basis.  Relatively little must be done to obtain orders after a restaurant has been located other than a

10   few cold calls.  (Nishikawa Decl. ¶ 8).  As set forth in Mr. Nishikawa's declaration, the Wagyu

11   customers he seeks to continue to contact (Prime One Twelve, Masa, Rangetsu, Azul, and Grass

12   Restaurant) were readily accessible, required virtually no investment to develop as customers, and

13   do not meet the definition of a "trade secret."  (Nishikawa Decl. ¶ 11).

14           Likewise, Poseidon Seafood's identity is not a protected trade secret which Mr. Nishikawa

15   may not utilize.  Under the factual circumstances of this case, Poseidon is for all intents and

16   purposes a continuation of the business Mr. Nishikawa has done with Zennoh going back 20 years.

17   In 2005 Zennoh nominated Poseidon to import Wagyu to the United States, because Zennoh was no

18   longer importing itself.  Zennoh performed the introductions between Mr. Nishikawa and Zennoh.

19   Furthermore Zennoh influences who Poseidon does business with  (Nishikawa Decl. ¶6-7).

20           Mr. Geller suggests, again without factual basis, that the pricing of Wagyu beef is somehow

21   a trade secret.  However, in fact the prices are set by the Japanese market and the only real variance

22   is based on the volume purchased.  (Nishikawa Decl. ¶ 12).

23           Plaintiff has also failed to provide evidentiary support to establish that it took reasonable

24   efforts to safeguard the secrecy of the identities of its Wagyu customers or Poseidon.  As noted in

25   Mr. Nishikawa's declaration, he was never told that this information was confidential or asked to

26   take steps to protect it.  The only alleged protection mentioned in Mr. Geller's declaration is the fact

27   that there is a "contractual restriction on disclosure or use of its confidential business information."

28   (Geller Decl. ¶ 4:22-24).  Mr. Geller's declaration does not make clear what contractual restrictions

contractual restrictions he is referring, but presumably he is referring to section 7 of the

Employment Agreement between Plaintiff and Mr. Nishikawa, which states:

> Contractor will not at any time, in any fashion, form, or manner, either directly or indirectly divulge, disclose, or communicate to any person, firm, or corporation in any manner whatsoever any information of any kind, nature, or description concerning any matters affecting or relating to the business of employer, including, without limitation, the names of any its customers, the prices it obtain or has obtained, or at which it sells or has sold its products, or any other information concerning the business of employer, its manner of operation, or its plans, processes or other date of kind, nature, or description without regard to whether any or all of the forgoing matters would be deemed confidential, material, or important.  The parties hereby stipulate that, as between the, the foregoing matters are important, material, and confidential, and gravely affect the effective and successful conduct of the business of employer, and its good will, and that any breach of their terms of this sections a material breach of this agreement.

This provision is overly broad and unenforceable under California law.  "Business and

Professions Code section 16600 provides: ' ... every contract by which anyone is restrained from

engaging in a lawful profession, trade, or business of any kind is to that extent void.' California

courts have consistently declared this provision an expression of public policy to ensure that every

citizen shall retain the right to pursue any lawful employment and enterprise of their choice. Section

16600 has specifically been held to invalidate employment contracts which prohibit an employee

from working for a competitor when the employment has terminated, unless necessary to protect the

employer's trade secrets."  *Metro Traffic Control, Inc. v. Shadow Traffic Network* (1994) 22

Cal.App.4th 853, 859-860, italics added.

With respect to Mr. Nishikawa's Rolodex, there is no evidence that simply having the

contact information somehow violates trade secret or other laws.  Furthermore, although the

commission spread sheets contain information on customers other than the Wagyu customers Mr.

Nishikawa is entitled to contact, this information is necessary until his commissions can be audited

and the information can be protected through means other than requiring Mr. Nishikawa to return

all copies of the spread sheets to plaintiff.

## 2.    Plaintiff Is Unlikely to Prevail on CFAA Claim

It is unclear what relevance the CFAA claim has to do with the relief sought by plaintiff  in

its application for preliminary injunction.  The laptop in question has been returned, defendants are

enjoined from deleting or destroying any electronic files under hitoshinishikawa@sbcglobal.net

1    and are required to turn over to return all electronically stored information pertaining to Geller.

2    In order to prevail on a CFFA claim plaintiff must show that defendants (1) intentionally

3    accessed, (2) a protected computer, (3) without authorization, and (4) as a result of such conduct,

4    (5) intentionally, recklessly or otherwise caused (6) damage. *ViChip Corp. v. Lee* (N.D. Cal. 2006)

5    438 F.Supp.2d 1087, citations omitted. Plaintiff cannot and will not be able to establish these

6    elements.

7    There is no evidence suggesting Mr. Nishikawa took the computer without authorization.

8    Mr. Nishikawa's undisputed declaration states that when he took the laptop the day he was

9    terminated he did so believing that Mr. Geller was letting him take it in exchange for his

10    contribution to a refrigerator purchased for the company. (Nishikawa Decl. ¶ 18). No where does

11    Mr. Geller dispute Mr. Nishikawa's version of events on September 5, 2007 or that Mr. Nishikawa

12    returned the computer promptly upon being aware that Geller wanted it back.

13    It is also unlikely that Plaintiff can prove that the laptop was protected or that Mr.

14    Nishikawa intentionally or otherwise damaged the computer Mr. Nishikawa purchased the

15    computer with his own funds and was reimbursed by Geller. (Nishikawa Decl. ¶ 19). As set forth in

16    detail in Mr. Nishikawa's declaration, he never intentionally deleted anything from the computer

17    before returning it to Geller other than emails related his new business.

18    At present, defendants have not had an opportunity to have the laptop examined by their

19    own forensic expert. However, even without another expert involved, it is clear that plaintiff's

20    expert is drawing a number of conclusions that are simply unsubstantiated. Neither plaintiff nor its

21    expert addresses what happened with the computer between September 17 when Mr. Nishikawa

22    returned it to Geller and September 28, when it was received by plaintiff's expert.

23    **D.    The Balance Tips in Defendants' Favor**

24    Plaintiff claims, with no evidentiary support, that defendants would be minimally harmed if

25    the requested preliminary injunctions were granted. Plaintiff also suggests that defendants should

26    have to prove to the Court the customers Mr. Nishikawa sold produce, meats or seafood to prior to

27    April 2003. This is a preposterous suggestion. It is plaintiff's burden to establish that the

28    information it seeks to protect are trade secrets or otherwise protected. As set forth above, plaintiff

has failed meet its burden. Mr. Nishikawa is entitled to contact and solicit the specified Wagyu customers and do business with Poseidon and issuing a preliminary injunction precluding his fledgling business from engaging in lawful competitive activities until trial would be crippling. The preliminary injunction as sought in its current form, would also cause irreparable harm to Mr. Nishikawa's family. He has three sons to support and proposed preliminary injunction would make it virtually impossible for him to make a living in the business he has been working in for over 25 years. (Nishikawa Decl. ¶ 40).

**E.    Should the Court Grant Plaintiff's Application, Plaintiff Should be Required to Post a Bond [FRCP, Rule 65(c); Cal. CCP § 529(a)]**

In the event the Court grants a preliminary injunction in plaintiff's favor precluding defendants from contacting all Wagyu customers and Poseidon Seafood, defendants respectfully request that the Court require plaintiff to post a reasonable bond pursuant to F.R.C.P., Rule 65(c), and Cal. CCP, section 529(a).

## IV.    <u>CONCLUSION</u>

For the foregoing reasons, defendants Hitoshi Nishikawa and Asia International respectfully request that if the court finds that plaintiff has established a basis for a preliminary injunction, that defendants be permitted to continue contacting and soliciting business from Prime One Twelve, Masa, Rangetsu, Azul, and Grass Restaurant, that defendants be permitted to contact and do business with Poseidon Seafood, that defendants be entitled to retain copies of the commission spreadsheets until Mr. Nishikawa's counterclaims are resolved, and that defendants be entitled to retain Rolodex contact cards created during Mr. Nishikawa's employment with Geller. In the event the court rules against defendants on the issue of contacting the Wagyu customers and Poseidon Seafood, defendants request that the court order plaintiff's to post a reasonable bond commensurate with the potential lost business.

Dated:  November 6, 2007          DILLINGHAM & MURPHY
                                  CARLA J. HARTLEY
                                  BARBARA L. HARRIS CHIANG

                        By:    _____/s/_____
                                  Attorneys for Defendants Hitoshi Nishikawa
                                  and Asia International, Inc.